## Ex parte KOEHLER, Receiver, etc.

*(Circuit Court, D. Oregon.  April 4, 1887.)*

1. RAILROAD COMPANIES—INTERSTATE COMMERCE—WHAT IS.

    The transportation of property from one state to another is interstate commerce, whether the carriers engaged in moving it, or the vehicles on which it is borne, cross the line of the state or not.

2. SAME—"INTERSTATE COMMERCE ACT"—WHAT CARRIERS INCLUDED—"COMMON CONTROL."—"CONTINUOUS SHIPMENT"—CARRIAGE IN OWN STATE.

    This act does not include or apply to all carriers engaged in interstate commerce, but only such as use a railway, or a railway and water-craft, "under common control, management, or arrangement for a continuous carriage or shipment" of property from one state to another; nor does it apply to the carriage of property by rail wholly within the state, although shipped from or destined to a place without the state, so that such place is not in a foreign country.

3. SAME—CASE IN JUDGMENT.

    The Oregon Railway & Navigation Company carries certain kinds of goods on its steamers forth and back between Portland and San Francisco at special and reduced rates.  The Oregon & California Railway, under the management of the petitioner, carries the same kinds of goods forth and back between Portland and Ashland, and way-stations in Oregon, at special and reduced rates.  The Oregon Pacific Railway Company carries the same kind of goods forth and back between certain points on the line of the Oregon & California road and San Francisco via its railway from Albany to Yaquina bay, and thence by steamer, at reduced rates, and thereby competes with the Oregon & California Railway and the Oregon Railway & Navigation Company for business between said points and San Francisco.  The Oregon Railway & Navigation Company and the receiver of the Oregon & California Railway act independently, though concurrently, in making these reduced rates, but no through bill of lading or freight receipt is given, nor is either interested in or liable for the carriage of the goods beyond its own line of transportation.  *Held,* that the Oregon & California road and the steamers of the Oregon Railway & Navigation Company in the carriage of the goods in question are not "used under any common control, management, or arrangement for a continuous carriage or shipment" thereof to and from San Francisco, within the intent and meaning of the act, and that the carriage and handling of said goods, so far as the receiver is concerned, is performed wholly within the state, and therefore specially exempted by the terms of the act from its operation, provided the same are not directly shipped to or from a foreign country.

*(Syllabus by the Court.)*

Petition for Instruction under the interstate commerce act.

*John W. Whalley,* for petitioner.

DEADY, J.  The road of the Oregon & California Railway Company is 400 miles in length, and lies wholly within this state, between Portland and Ashland, near the southern boundary thereof.  It is operated at present by a receiver of this court heretofore appointed on the application of the plaintiff, in the pending suit of *Harrison* v. *Oregon & C. Ry. Co.,* to enforce the lien of a mortgage thereon.  On March 30, 1887, the receiver, Mr. Richard Koehler, filed a petition in this court, asking for instruction whether the Oregon & California road is within the purview of the interstate commerce act lately passed by congress, when engaged in carrying freight destined to or coming from a point or place without the state, under the circumstances herein stated.

It appears from the petition that the receiver, acting under the instruction of this court heretofore given, (*Ex parte Koehler*, 25 Fed. Rep. 73,) has been and now is carrying wheat and other agricultural products of the state, destined to San Francisco, from certain points along the line of the Oregon & California road where there is competition with the Oregon Pacific Railway Company, at special and lower rates than if destined for Portland only; that such products are taken from Portland to San Francisco, at a special rate, on the steamers of the Oregon Railway & Navigation Company; that said steamers also carry goods at special rates on their return trips from San Francisco to Portland, destined to the points aforesaid along the line of the Oregon & California road, consisting of the products of California, China, the Hawaiian islands, and the Central and South American states, which goods are carried from Portland, on the Oregon & California road, to the places of their destination at special and lower rates than those charged for goods shipped from Portland for other and non-competing points on said road; that the Oregon Pacific Railway Company is operating a line of railway from Albany to Yaquina bay, Oregon, in conjunction with a line of steamers between the latter place and San Francisco, and is avowedly carrying and offering to carry freight to and from San Francisco, and portions of the country traversed by the road of the Oregon & California Company, at cost, and that, unless the receiver is allowed to make a special rate for freight between the points on the Oregon & California road subject to this competition and San Francisco, said road will not be able to retain its share of this business; and that, although the Oregon Railway & Navigation Company and the receiver of the Oregon & California road, in making special rates as aforesaid, purpose to obtain, each for itself, the carriage of goods which otherwise they might lose, yet there is no agreement or guaranty between them on the subject, nor is such freight ever shipped on a through bill of lading, or the one party in any way liable for the default or miscarriage of the other in respect thereto, but each for itself carries the same over its own route,—it being represented to and understood by the shippers that, if they send such goods by these lines of transportation, they will be carried over each at a certain reduced rate; and that the Oregon & California road and the Oregon Railway & Navigation steamers "are not under any 'common control, management, or arrangement for a continuous carriage or shipment,' in any manner," unless the facts herein stated make them so, and on this point the receiver prays the advice and direction of the court.

The first section of the act reads as follows:

"That the provisions of this act shall apply to any common carrier or carriers engaged in the transportation of passengers or property *wholly by railroad, or partly by railroad and partly by water when both are used, under a common control, management, or arrangement, for a continuous carriage or shipment*, from one state or territory of the United States, or the District of Columbia, to any other state or territory of the United States, or the District of Columbia, or from any place in the United States to an adjacent foreign country, or from any place in the United States, through a foreign country, to any other place in the United States, and also to the transporta-

tion in like manner of property shipped from any place in the United States to a foreign country, and carried from such place to a port of transhipment, or shipped from a foreign country to any place in the United States, and carried to such place from a port of entry either in the United States or an adjacent foreign country: provided, however, that *the provisions of this act shall not apply to the transportation of passengers or property, or to the receiving, delivering, storage, or handling of property, wholly within one state, and not shipped to or from a foreign country from or to any state or territory as aforesaid.* The term 'railroad,' as used in this act, shall include all bridges and ferries used or operated in connection with any railroad, and also all the road in use by any corporation operating a railroad, whether owned or operated under a contract, agreement, or lease; and the term 'transportation' shall include all instrumentalities of shipment or carriage. All charges made for any service rendered or to be rendered in the transportation of passengers or property as aforesaid, or in connection therewith, or for the receiving, delivering, storage, or handling of such property, shall be reasonable and just; and every unjust and unreasonable charge for such service is prohibited and declared to be unlawful."

There is no doubt that this railway and these steamers are engaged in interstate commerce in the carriage of these goods under the circumstances stated. Any carriage of goods which crosses a state line is interstate commerce; and the fact that transportation from one state to another is accomplished in whole or in part through the agency of independent and unrelated carriers up to and from the state line, does not affect the character of the transaction in this respect. For, whenever an article destined to a place without the state is shipped or started therefor, it becomes the subject of interstate commerce, and the carriers employed in the transportation thereof, although neither of them may pass from one state to the other, are subject, as instruments of such commerce, to national legislation and control. *The Daniel Ball*, 10 Wall. 561; *Hall* v. *De Cuir*, 95 U. S. 485; *Wabash, etc., Ry. Co.* v. *Illinois*, 118 U. S. 572, 7 Sup. Ct. Rep. 4; *Ex parte Koehler*, 25 Fed. Rep. 76.

But the interstate commerce act does not include or apply to all the instrumentalities or agencies used or engaged in interstate commerce. It does not include any water-craft unless it is used in connection with a railway, "under a common control, management, or arrangement, for a continuous carriage or shipment" from one state or territory of the United States to another, or to or from such state or territory from or to a foreign country. Nor does it include the carriage or handling of property, by rail or otherwise, when such carriage and handling is performed wholly within a state, unless the same is directly shipped to or from a foreign country from or to such state.

The mere fact that a railway wholly within a state and a vessel running between said state and another meet at a point within the railway state, and thus form a continuous line of transportation between the two states, by the one taking up the goods delivered by the other at its terminus, and carrying them thence to their destination, does not bring the carriers who so use the railway and steamer within the act. So long as the railway and steamer are each operated under a separate and distinct control, making its own rates, and only liable for the carriage and safe delivery of the goods at the end of its own route, the act does not apply

to the transaction. To make these carriers subject to the act, the railway and vessel must, as therein provided, be operated or used under a "common control,"—a control to which each is alike subject, and by which rates are prescribed and bills of lading given for the carriage of goods over both routes as one.

On this apparently plain exposition of the act, the railway of the Oregon & California Company and the steamers of the Oregon Railway & Navigation Company are not "used under a common control, management, or arrangement" in this respect, and therefore are not subject to the act, although engaged in interstate commerce. Each carrier makes its own rate, and undertakes for the carriage and delivery of goods not otherwise than over its own route. The fact that both are interested in maintaining the traffic between Oregon and California over this route and by this means, so as to secure it against the competition of the Oregon Pacific, is not material. Each is at liberty, as far as the other is concerned, to raise or further reduce its rates to-morrow if the exigencies of the traffic permit or require it. The present rate is not the result of any "arrangement" between the two carriers "for a continuous carriage or shipment" from Oregon to San Francisco, and *vice versa*, but only an independent, though concurrent, reduction of rates by each over its own route, for the purpose of retaining the traffic thereon against the competition of a rival route.

The questions involved in this inquiry arise on the first section of the act. Taking its several clauses together, my impression is that no carrier is within its operation unless he is engaged in interstate commerce by means of a railway or railway and water-craft under one "control, management, or arrangement," and that by such means or instrumentalities he does actually and continuously carry goods from within to without the state, or from without to within the same. He may form a link in a line of interstate commerce; but, if his relation to such commerce or interest in or liability for the carriage thereof does not extend beyond the line of the state, he is not within the act.

The receiver is therefore instructed that he is at liberty, so far as the act is concerned, to make special rates for the carriage of goods from or to points on the line of his road for the purpose of obtaining or retaining business therefor against other carriers competing for the same. But this direction does not apply to goods shipped directly to or from a foreign country over the line of the Oregon & California road.