[S. F. No. 6687.   In Bank.—December 29, 1913.]

WILMINGTON TRANSPORTATION COMPANY (a Corporation), Petitioner, v. RAILROAD COMMISSION OF THE STATE OF CALIFORNIA, Respondent.

RAILROAD COMMISSION—JURISDICTION TO FIX RATES—TRANSPORTATION OVER HIGH SEAS BETWEEN SAN PEDRO AND AVALON.—The state railroad commission has jurisdiction under the Public Utilities Act (Stats. 1911, p. 18) to fix the rates to be charged by a corporation for the transportation of passengers and freight between San Pedro and Avalon on Santa Catalina Island, both ports being situated in Los Angeles County, notwithstanding the vessels, in passing from one of these ports to the other, must travel in part over the high seas and outside of the territorial jurisdiction of the state of California.

ID.—COMMERCE CLAUSE OF FEDERAL CONSTITUTION.—Under such circumstances the vessels, while on the high seas on their trips between San Pedro and Avalon, are not engaged in "commerce with foreign nations," within the meaning of the commerce clause of the federal constitution.

APPLICATION for Writ of Review to be directed against the Railroad Commission of the state of California.

The facts are stated in the opinion of the court.

Gibson, Dunn & Crutcher, and Edward E. Bacon, for Petitioner.

Max Thelen, Douglas Brookman, and Karl L. Ratzer, *Amicus Curiae,* for Respondent.

ANGELLOTTI, J.—This is a proceeding inaugurated by petitioner under the provisions of section 67 of the act known as the Public Utilities Act (approved December 23, 1911), [Stats. 1911 (Ex. Sess.), p. 18]), for the purpose of having the lawfulness of an order of the railroad commission of this state inquired into and determined.   The order was one made by the railroad commission in a certain proceeding pending before that body in which the firm of Miller & Donaldson are complainants, and petitioner here is defendant, inaugurated with a view to the proper adjustment and reduction of rates and fares charged by petitioner for the transportation of passengers and freight between the ports of San Pedro and Avalon, both of which are situated in the county of Los Angeles in this state.   The order, the validity of which we are asked to inquire into and determine, was one denying a motion to dismiss the proceeding, and requiring petitioner to satisfy the complaint or to answer within ten days.   The motion was based upon the claim that the railroad commission had no jurisdiction in the matter.

No suggestion is made by respondent that the law does not contemplate a review by this court of an order of the character here involved, but was intended simply to provide for a review of what might properly be considered a final order or judgment in any proceeding before the commission.   The parties have addressed themselves solely to the question they apparently desire to have decided, viz.: the jurisdiction of the commission under such circumstances as here exist.   We have not considered at all the question we have just suggested, and this decision is not to be taken as expressing any view thereon.

The petitioner is a California corporation, with its principal place of business in Los Angeles County, in this state.   Its occupation or business is that of a common carrier of persons and freight, by sea, between the port of San Pedro and that of Avalon, Santa Catalina Island, both of which ports are, as we have said, in Los Angeles County.   The whole of Santa Catalina Island is a part of Los Angeles County.   Notwithstanding that the ports are in the same county, a vessel, in passing directly from one to the other, must travel for upward of twenty miles upon the high seas, outside of the territorial jurisdiction of this state.   As said in respondent's

brief: "Vessels plying between San Pedro and Avalon cross the high seas for the sole purpose of getting from one point in Los Angeles County to another point in the same county. They do not touch at any other port, either of the United States or of any foreign country. They do not transfer their passengers or freight to any other vessel or receive the same from any other vessel in their course. They do not on the voyage take on or put off any article of commerce. While a portion of the voyage is on the high seas, the navigation thereof is merely incidental to the real purpose of the voyage, which is to ply between two ports, both of which are located in the same county in this state."

Our law confers upon the railroad commission the power to establish rates of charges for transportation of passengers and freight by railroads and other transportation companies. (Const., art. XII, sec. 22.) In section 23 of article XII it is stated that "every common carrier is hereby declared to be a public utility subject to such control and regulation by the railroad commission as may be provided by the legislature," and the railroad commission is empowered to fix the rates to be charged for services rendered by public utilities, as authorized by the legislature, and it is further provided that "the right of the legislature to confer powers upon the railroad commission respecting public utilities is hereby declared to be plenary and to be unlimited by any provision of this constitution." In section 2, subdivision 1 of the Public Utilities Act, it is provided that the term "common carrier" when used in the act, includes, among others, "every corporation or person . . . owning, controlling, operating or managing any vessel regularly engaged in the transportation of persons or property for compensation upon the waters of this state or upon the high seas, over regular routes between points within this state." It is not to be doubted that these provisions purport to confer jurisdiction upon the railroad commission in the matter of fixing the rates to be charged by petitioner for transportation of passengers and freight between San Pedro and Avalon, notwithstanding that the vessels, in passing from one of these ports to the other, must travel in part over the high seas, and outside of the territorial jurisdiction of the state of California.

The sole claim of petitioner is that the railroad commission of this state has no jurisdiction to regulate the rates charged for such transportation, for the reason that in so far as such transportation is over the high seas, the power to regulate the charges therefor is vested exclusively in the Congress of the United States by virtue of the declaration in section 8 of article I of the federal constitution, that "The Congress shall have power . . . to regulate commerce with foreign nations, and among the several states, and with the Indian tribes." If not so vested in the Congress of the United States by this provision, confessedly the railroad commission has jurisdiction in the matter. It is obvious that we have here no attempt to regulate commerce among the different states of the United States, or with the Indian tribes. The claim of petitioner must therefore be and is, that under the circumstances above set forth, petitioner's vessels, while on the high seas on their trips between San Pedro and Avalon, are engaged in "commerce with foreign nations."

In view of the admitted facts, it is difficult to find any ground for this claim, except such as is to be found in some language used in certain decisions. In the absence of clear expression to the contrary by the supreme court of the United States on the subject, and treating the matter independent of authority, we should not hesitate to say that no support whatever for the claim is to be found in the language referred to. What possible "commerce with" any foreign nation or nations is involved under the circumstances existing here, even if we treat the word "commerce" as synonymous with "intercourse," as is claimed by petitioner should be done? All the traffic and intercourse are between two ports in the same county and state, and no part of the transportation is over the territory of any other state or of any foreign nation or nations, the route so far as it is outside of the state of California being over territory not owned by any particular nation or nations, but open for the purposes of travel and transportation to the use of the people of all nations. Intercourse or commerce with a foreign nation would necessarily seem to imply something more than the mere passing of ships on this common pathway. It would seem to necessarily involve some traffic in the territory of the foreign nation or some movement of persons or property to or from the territory

or vessels of such foreign nation. The object of the provision of the federal constitution was stated by the United States supreme court in *Lehigh Valley R. R. Co.* v. *Pennsylvania,* 145 U. S. 192, [36 L. Ed. 672, 12 Sup. Ct. Rep. 806], as follows: "The conflict between the commercial regulations of the several states was destructive to their harmony and fatal to their commercial interests abroad, and this was the mischief intended to be obviatel by the grant to the Congress of the power to regulate commerce with foreign nations and among the states." (See, also, *County of Mobile* v. *Kimball,* 102 U. S. 691, [26 L. Ed. 238].) Obviously, such commerce as is here involved does not come within the "mischief intended to be obviated" by the section, those in the state of California being the only persons concerned therein.

There is, however, certain language in some of the decisions tending to support petitioner's view, and there is also one decision of a United States circuit court which appears to be squarely in point.

The principal case relied on by petitioner is that of *Lord* v. *Steamship Co.,* 102 U. S. 541, [26 L. Ed. 224], a case involving the application of the federal limited liability law to contracts of affreightment between two ports of this state. These contracts could not be performed except by going not only out of California, but out of the United States as well. There was really no question of commerce with a foreign nation involved in this case, for the limited liability law was not enacted by Congress under its power to regulate commerce, but was attributable entirely to the exercise of its admiralty and maritime jurisdiction, a power, as said in *Lehigh Valley R. R. Co.* v. *Pennsylvania,* 145 U. S. 192, [36 L. Ed. 672, 12 Sup. Ct. Rep. 806], "not confined to the boundaries or class of subjects which limit and characterize the power to regulate commerce; but, in maritime matters, it extends to all matters and places to which the maritime law extends," even, as was held in *In re Garnett,* 141 U. S. 1, [35 L. Ed. 631, 11 Sup. Ct. Rep. 840], to a steamer engaged in commerce on a river within a state. It was applicable, of course, to any vessel navigating the high seas, even though the voyage was between ports in the same state, altogether regardless of whether or not the vessel was engaged in commerce with a foreign nation. This was declared in *Lehigh Valley R. R. Co.* v.

*Pennsylvania,,* 145 U. S. 192, [36 L. Ed. 672, 12 Sup. Ct. Rep. 806], to have been the single question in the Lord case, the court saying: "The single question in *Lord* v. *Steamship Co.* was . . . whether Congress had power to regulate the liability of the owners of vessels navigating the high seas, to engage only in the transportation of goods and passengers, between ports and places in the same state, it being conceded that the voyages of the steamship in respect of whose loss the question arose were always ocean voyages." And the court further said that in that case it was unnecessary to invoke the power to regulate commerce in order to find authority for the law in question, thereby practically discrediting what was said in the opinion in the Lord case *as to what constitutes commerce with a foreign nation.* With all due respect to the learned author of the opinion in the Lord case, we must confess that we are unable to follow his reasoning upon this question. Substantially he says: the vessel there involved, traveling between two ports in this state, "was navigating among the vessels of other nations"; that while she was not trading with them, she was "navigating with them," and consequently "with them was engaged in commerce"; if in her navigation she inflicted a wrong on another country, the United States, and not the state of California, must answer for what was done; "in every just sense, therefore, she was, while on the ocean, engaged in commerce with foreign nations." The conclusion on this point appears to us to be without any support in the reasoning. The conclusion that the limited liability law was applicable was undoubtedly correct for the reason stated in the later case of *Lehigh Valley R. R. Co.* v. *Pennsylvania,* 145 U. S. 192, [36 L. Ed. 672, 12 Sup. Ct. Rep. 806], but in view of what is said in the latter case as to the true ground of decision in the Lord case, we do not feel bound to follow the views expressed in the Lord case as to what constitutes commerce with foreign nations.

The circuit court case to which we have referred is *Pacific Coast S. S. Co.* v. *Board of R. R. Commissioners,* 18 Fed. 10. This case was decided prior to the decision of the supreme court in *Lehigh Valley R. R. Co.* v. *Pennsylvania,* and appears to have been based upon what was said in the Lord case.

*Hanley* v. *Kansas City Southern Railway Co.,* 187 U. S. 617, [47 L. Ed. 333, 23 Sup. Ct. Rep. 214], was a case in-

volving the right of the railroad commission of Arkansas to fix and enforce rates for traffic moving from one point in Arkansas to another point in the same state, where the shipments passed for a distance of sixty-four miles through the "Indian Territory," which was held to come within the meaning of the word "states" in the clause "among the several states" in section 8 of article I of the constitution. It was held that the exercise of any such right would be an attempted regulation of commerce "among the several states," a matter within the exclusive province of Congress under the express language of the constitutional provision. It will be observed that this case involved in part the transportation of goods and persons over the territory of what was held to be another state, something coming within the broad definition of the term "commerce" given in one or two of the decisions, and which might fairly be held to be commerce "among the several states." But we are at a loss to see the applicability of this decision to the facts in the case at bar, where the only prohibition we have to meet is that relating to "commerce with foreign nations." Bearing in mind that the high seas belong to no nation, constituting simply the common highway of all nations, it seems to us that the decision is in no way applicable. What may be claimed to have been said in the Hanley case as to the right of a state to regulate commerce being limited to commerce within the state, or strictly domestic commerce, must be taken in the light of the facts of that case, which shows an attempt to regulate commerce in another state. A state of course has no power to regulate commerce among the several states or with a foreign nation. But it has all powers in regard to commerce that have not been delegated to Congress.

In *The Abby Dodge* v. *United States*, 223 U. S. 166, [56 L. Ed. 390, 32 Sup. Ct. Rep. 310], it was declared that a vessel engaged in gathering sponges on the high seas and without the limits of any state, and transporting the same to the United States, is engaged in foreign commerce, and is therefore amenable to the regulative power of Congress upon that subject, including the power to forbid merchandise carried in such commerce from entering the United States. It appears reasonable enough to conclude that in taking sponges from the high seas and without the limits of any state, and trans-

porting them to the United States, the vessel was engaged in "foreign," as distinguished from strictly "domestic" commerce. The court did not expressly hold that the vessel was engaged in commerce with foreign nations, but holding that it was engaged in "foreign commerce," declared that "the practices from the beginning, sanctioned by the decisions of this court, establish that Congress by an exertion of its power to regulate foreign commerce, has the authority to forbid merchandise carried in such commerce from entering the United States," citing *Buttfield* v. *Stranahan,* 192 U. S. 470, 492, 493, [48 L. Ed. 525, 24 Sup. Ct. Rep. 349].

The case of *Cowden* v. *Pacific Coast S. S. Co.,* 94 Cal. 470, [28 Am. St. Rep. 142, 18 L. R. A. 221, 29 Pac. 873], involved a matter of maritime contract.

There is no other case cited requiring notice.

In no case cited except the Lord case is it expressly declared that such commerce as is here involved is "commerce with foreign nations." In no decision of the United States supreme court has it been squarely decided that a state may not regulate charges for transportation under such circumstances as exist here. Of course, the position of learned counsel for petitioner is that the decisions cited establish the proposition that the mere *transportation* of passengers and freight constitutes commerce, and that in so far as such transportation is over the territory of another state it is interstate commerce, and in so far as it is over the territory of another nation, it is commerce with that nation. All this may be here assumed to be true. But here the transportation is not over the territory of any other state or any foreign nation, but over the high seas, constituting the common highway of the people of all nations. It does seem to us that under such circumstances, whether the mere transportation over the high seas be deemed commerce or not, it is not in itself commerce with foreign nations, and that some other element, such as transportation to a foreign port, or delivery of the goods to a foreign vessel, etc., would be essential to make it commerce with foreign nations. We are unable to see that all transportation over waters outside of the territorial limits of a state is necessarily commerce with foreign nations. In our judgment it may or may not be such, depending on other facts, and we think that the facts in the case at bar are not such as to make it such

commerce. We realize that in view of certain expressions in some of the decisions, the question is not entirely free from doubt, however plain it may appear to us as an original proposition. If we are in error in our conclusion as to the effect of the decisions of the supreme court of the United States in this matter, it will be a simple matter for petitioner to obtain redress in the federal courts.

The order of the railroad commission is affirmed.

Shaw, J., Lorigan, J., Henshaw, J., and Melvin, J., concurred.