[Civ. No. 8074. First Appellate District, Division One.—May 11, 1932.]

TRANSMARINE CORPORATION (a Corporation), Respondent, v. R. W. KINNEY COMPANY, INC. (a Corporation), Appellant.

412

McCutchen, Olney, Mannon & Greene, Farnham P. Griffiths and Jay T. Cooper for Appellant.

Treadwell, Van Fleet & Laughlin, Single & Hill, Carroll Single and T. J. Labhard for Respondent.

ROBINSON, J., *pro tem.*—The appeal in this action, taken by bill of exceptions, is from a judgment entered in the superior court in favor of the plaintiff in the sum of $2,058.33 upon causes of action for freight claimed to be due under the terms of certain identical bills of lading which provided as follows:

"It is hereby expressly agreed that the freight (as stated herein) whether prepaid by the Shipper or to be collected at destination, becomes wholly due and belongs absolutely to the Carrier upon the receipt of the goods into the custody of the Carrier or its agents, and if prepaid is not to be

returnable, and if collect, is payable ship and/or cargo lost or not lost.'' (Tr., p. 41, fol. 123.)

The facts pertinent to a decision by this court are as follows: Republic Iron & Steel Company, shipped by rail from Youngstown, Ohio, to Port Newark, New Jersey, five carloads of wrought iron pipe. At Port Newark the shipment was received by Atlantic Port Railway Corporation, a switching or terminal carrier, and delivered to respondent. The latter accepted the shipment for transportation to San Francisco and Oakland, California, by water. Two of the carloads were received by the respondent on March 8, two on March 9 and one on March 11, 1926. Formal issuance of bills of lading showing appellant R. W. Kinney Co., Inc., as consignee was made on March 13, 1926, each of which bills of lading contained the following clause:

''In accepting this Bill of Lading, the Shipper, Owner, Consignee and/or Holder thereof, agree to be bound by all of its terms and conditions, whether written or printed, as fully as if they were all signed by such Shipper, Owner, Consignee, and/or Holder.''

The steamship ''Suduffco,'' operated by the respondent, sailed with the shipment on March 13, 1926, for San Francisco. On the following day, by wireless, she reported all was well and gave her position, approximately 130 miles south of Scotland Light Ship. That was the last heard of or from the ''Suduffco''.

A complaint containing two similar causes of action was filed in the Superior Court of the City and County of San Francisco on March 11, 1930. Each cause of action sets up the corporate existence of the parties, alleges that the plaintiff chartered, controlled and operated the steamship ''Suduffco''; that on or about March 13, 1926, plaintiff received the respective shipments of wrought iron pipe from the Republic Iron & Steel Company, consigned to the defendant, R. W. Kinney Co., Inc., for transportation to San Francisco under an agreement in writing (bills of lading) by which the defendant made the promise and agreement which is hereinabove quoted from the bills of lading.

Other averments allege the loading of the goods aboard the steamship ''Suduffco'', the subsequent loss of the ship and cargo, and the demand for, and nonpayment of, the freight.

■ A general and special demurrer was interposed by the defendant. The point made on general demurrer was that the complaint was fatally defective in failing to show that the cause of the loss of the shipment was one for which the carrier, under the contract of carriage, was excused from liability. The special demurrer attacked the complaint for uncertainty as to the identity of the contract. Both were properly overruled.

■ By use of inappropriate language, the defendant in its amended answer attempts to deny most of the allegations of the complaint upon "no knowledge or information sufficient to form a belief", etc. Under the provisions of section 437 (2) of the Code of Civil Procedure and the decisions thereon, such attempted denial is insufficient, and admits the allegations. (*Brooks* v. *Nelson,* 95 Cal. App. 144 [272 Pac. 610] ; *Aronson & Co.* v. *Pearson,* 199 Cal. 295, 298 [249 Pac. 191] ; *Nave* v. *Graham,* 37 Cal. App. 332 [174 Pac. 76] ; 21 Cal. Jur., pp. 151–153; *Davidson Inv. Co.* v. *Dabney,* 103 Cal. App. 392 [184 Pac. 673].) However, the answer does not deny that any sum as freight became due from the defendant to the plaintiff. At the trial, and upon this appeal, stipulations were entered into between the parties admitting the following facts:

(1) The corporate existence of each of the parties;

(2) That the second cause of action should be controlled by proof upon the first cause of action;

(3) That at all times mentioned in the complaint, plaintiff chartered, controlled and operated the steamship "Suduffco", and that plaintiff placed said steamship on general berth and undertook to transport merchandise for shipment between Atlantic and Pacific ports, and was a common carrier of merchandise by sea;

(4) That on March 13, 1926, said steamship "Suduffco" left Port Newark for Pacific Coast ports with a cargo of merchandise;

(5) That before starting the voyage the plaintiff at Newark received from Republic Iron & Steel Company, Youngstown, Ohio, the shipment referred to in the first cause of action, the same being consigned to the defendant at San Francisco and Oakland, California;

(6) That the shipments consigned to it were transported from Youngstown to the ship by railroad carriers engaged

in interstate commerce in so transporting said shipments; that none of these railroads was under any common control, management or arrangement for a continuous carriage or shipment; that the terminal railway carrier at Port Newark, the Atlantic Port Railway Corporation, shared in rail rates under Interstate Commerce Commission jurisdiction;

(7) That under the established shipping custom and practice between railroads and steamship companies engaged in intercoastal or foreign service, when shipments are not prepaid the terminal carrier collects from the ocean carrier receiving the shipments, the railroad freight charges, and makes its accounting with connecting railroads. The ship-. ments here involved were forwarded collect and the freights were paid by plaintiff to the terminal carrier, and said carrier in turn paid said charges, less its share, to the various connecting carriers; that plaintiff made such payment more than three years prior to the commencement of this action;

(8) That the merchandise was loaded aboard the "Suduffco" prior to March 13, 1926;

(9) That during the voyage said steamer and said merchandise were lost at sea;

(10) That after receipt by plaintiff of the merchandise, it issued freight bills and bills of lading covering each separate shipment in the five railroad freight cars; that said bills of lading were of the regular current form used by plaintiff, and were signed by plaintiff's auditor, dated March 13, 1926, and forwarded to the shippers;

(11) That after the loss of said ship, plaintiff demanded and was refused payment of freight charges;

(12) That R. W. Kinney Company insured the shipments, and in later making claim for loss, filed with the insurance carrier the bills of lading herein referred to; that the insurance company paid the insured value, less transportation charges from point of shipment to point of destination, and agreed in writing that in the event of suit by Transmarine Corporation to collect such charges, it would protect R. W. Kinney Company, Inc.; that prior to making claim on the policy, and before the steamer was reported lost, the Kinney Company paid for the merchandise.

In a second defense, the amended answer alleges upon information and belief that the plaintiff placed the steam-

ship "Suduffco" on general berth, and as a common carrier of merchandise undertook to transport merchandise between Atlantic and Pacific ports; then follows an allegation that, in the premises, the complaint states insufficient facts to constitute a cause of action.

A third defense sets up the bar of the statute of limitations—section 337, subdivision (1), of the Code of Civil Procedure of the state of California.

A fourth defense alleges upon information and belief that part of the freight claimed in the first cause of action was for advances to cover freight charges of railroad carriers; that in the premises, the railroad carriers were engaged in interstate commerce, and that that portion of the claim is barred by the provisions of the Interstate Commerce Act of February 4, 1887, chapter 104, section 16, subsection (3), subdivision (a), 24 Statutes, 379, as amended.

A fifth defense alleges on information and belief that of the freight claimed in the first cause of action, $1241.81 was for advance charges for rail transportation from Youngstown to Port Newark, and that said portion of the amount sued for is barred by the provisions of section 339, subsection (1), of the Code of Civil Procedure.

Upon the issues framed, the trial court found in favor of the plaintiff and gave judgment for the full amount prayed for.

The first point relied upon by the appellant is that under the clause "ship and/or cargo lost or not lost", plaintiff cannot recover because of its failure to prove that nondelivery of the merchandise was due to a cause which would relieve it of its responsibility to earn the freight.

The written contract of the parties unambiguously fixed the carrier's right to freight in plain words that require no interpretation—"It is hereby expressly agreed that the freight (as stated herein) . . . becomes wholly due and belongs absolutely to the Carrier upon the receipt of the goods into the custody of the Carrier or its agents, and if prepaid is not to be returnable, and if collect, is payable ship and/or cargo lost or not lost."

Viewing the foregoing provision as a whole, it appears that thereunder, if the freight be prepaid (which, however, was not the case here), then, without any qualification, it is "not to be returnable, . . . ship and/or cargo lost or not

lost". Let us suppose that the appellant had prepaid the freight under the foregoing agreement; that upon payment, the freight belonged absolutely to the carrier, and that the same was not returnable even though the ship were lost. Could the shipper successfully sue for the return of that which it had agreed in writing should so belong to the carrier and be not returnable? An action to accomplish that object would not be upon the contract, but would constitute an attempt to defeat its very terms.

The defendant below did not prepay the freight, but did by the same solemn written obligation bind itself to the foregoing provision that the freight "whether prepaid by the Shipper or to be collected at destination, becomes wholly due and belongs absolutely to the Carrier upon receipt of the goods . . . and . . . is payable ship and/or cargo lost or not lost". It would be neither logical nor in accord with the plain intention of the contracting parties to hold that, if the freight was prepaid, unquestionably it belonged to, and was not returnable by, the carrier, but that, if not prepaid, the carrier, although by agreement the absolute owner of the freight, could not successfully sue for its recovery without proving an exculpating reason for failure to make delivery of the cargo at destination.

The position taken by the respondent is that the action is based solely upon the contracts in writing, which alone should control the respective rights and obligations of the parties, and respondent cites in support of its contention, *Allanwilde Transport Corp.* v. *Vacuum Oil Co.*, 248 U. S. 377 [3 A. L. R. 15, 63 L. Ed. 312, 39 Sup. Ct. Rep. 147]; *Standard Varnish Works* v. *The Bris*, 248 U. S. 392 [63 L. Ed. 321, 39 Sup. Ct. Rep. 150]; *International Paper Co.* v. *The Gracie D. Chambers*, (1919) 248 U. S. 387 [63 L. Ed. 318, 321, 39 Sup. Ct. Rep. 149], which cases are cited in the footnote to section 29, page 59, of Poor on Charter Parties and Ocean Bills of Lading, the text of which reads as follows:

"In line bills of lading, there are often elaborate provisions with regard to advance freight. Where the bill of lading provided 'prepaid freight to be considered earned on shipment of goods', and, further, that the freight was not to be returned 'ship lost or not lost', and the ship was

lost soon after sailing, it was held that the ship owner could collect the freight from the various shippers.''

While it is true, as appellant points out, that the authorities cited by respondent relate to cases where freight had been prepaid and not where the shipper was suing for freight, the language used in the decisions is pertinent to the issues here presented.

In *Allanwilde Transport Corp.* v. *Vacuum Oil Co., supra,* the Supreme Court held that where the shipper had paid the freight under a bill of lading similar to that entered into between the parties to the present action, and the voyage was frustrated and the goods never carried, the shipper had no obligation to return the freight money. In that case the court approached and disposed of a presentation and various assertions of unreasonableness and unfairness very similar to those of the appellant, as follows (pp. 384, 385):

''The argument of counsel upon the elements of the questions is quite extensive, ranging through all of the ways in which contracts can be dissolved or their performance excused by the agreement of the parties or prevented by some supervening cause independent of the parties and dominating their convention. We do not think it is necessary to follow the argument through that range. It may be brought to the narrower compass of the charter party and the bills of lading. . . .

''Let us repeat: the explicit declaration is—'Freight to be prepaid net on signing bills of lading . . . Freight earned, retained and irrevocable, vessel lost or not lost.' The provision was not idle or accidental. It is easy to make a charge of injustice against it if we consider only the defeat of the voyage and the noncarriage of the cargo. But there are opposing considerations. There were expected hazards and contingencies in the adventure and we must presume that the contract was framed in foresight of both and in provision for both. We cannot step in with another and different accommodation.''

In *Standard Varnish Works* v. *The Bris, supra,* the shipper had prepaid the freight charges upon a shipment of goods which, because the government would not grant the ship a clearance, never left port. The court held the shipper could not recover the payments as ''the contract determines against them'', and said:

"Their declaration [i. e., the declarations in the bills of lading] is that 'prepaid freight is to be considered as earned on shipment of the goods and is to be retained by the vessel's owners, vessel or cargo lost or not lost'. The declaration is clear, and, in anxiety of purpose, uses some tautology. The words 'prepaid freight is to be considered as earned' declare a completed right and carried the power of retention without the expression of the latter. And the expression of the right and the power cannot be put aside. Counsel, however, would make them purposeless and would consider the bill of lading as if they were not contained in it, and urges that the only effect of the refusal of clearance to the ship was the 'commercial frustration of the adventure' working a dissolution of the contract, absolving from performance but requiring the restitution of the payments that were made as the consideration of performance."

The appellant makes no charge of fraud, misrepresentation or mistake in connection with the issuance and acceptance of the bills of lading; nor is any attempt made by the appellant to set up any counterclaim or demand for affirmative relief, based on loss of the shipment—if such counterclaim or demand for affirmative relief could be set up in the action. Although a seeming hardship may result to the appellant, this court cannot grant relief therefrom by, in effect, making a new contract for the parties.

The bills of lading contain a list of the causes of loss for which the carrier shall not be responsible; but such provisions do not in any way bar the carrier's right to collect freight on goods lost after the same have come into the carrier's possession. That right accrued upon the carrier's receipt of the goods. Any remedy which the shipper might have to recover for loss of the goods would of necessity accrue after they had been received by the carrier. The two covenants, one to pay freight and the other to compensate for lost cargo, are independent. (*Front St. etc. R. Co.* v. *Butler,* 50 Cal. 574, 577.)

"Where the covenants of the respective parties are to be performed at different times they are held to be independent and the breach by one party of his covenant does not excuse the performance by the other of his covenant or relieve him of liability for damages for a breach thereof."

(*Fresno Canal etc. Co.* v. *Perrin*, 170 Cal. 411, 416 [149 Pac. 805, 807].)

The complaint, which is in ordinary, concise language, alleges the material or issuable facts constituting the cause of action. It was unnecessary for the plaintiff to allege or prove that the failure to deliver the goods at destination was due to one of the excepted clauses.

"The only allegations essential to a complaint are those required in stating the cause of action. A plaintiff need not anticipate or negative any defense or counterclaim on the part of the defendant . . . Allegations inserted for the purpose of intercepting an anticipated defense are superfluous; they do not require an answer, and may render a pleading demurrable for ambiguity or uncertainty.

"Under this rule, a plaintiff is not bound to show affirmatively in his complaint that the action is not barred, that he was not guilty of contributory negligence, that he did not do prohibited acts, or that he performed conditions subsequent. Nor need he negative a defense founded upon an exception to a general rule." (21 Cal. Jur. 61–63.)

█ It being unnecessary for the plaintiff under the code system of pleading to anticipate any defense that might be raised, that the loss of the goods resulted from an act or omission for which the carrier would be responsible, no burden or duty rested upon the plaintiff to make proof of that which it did not have to allege; and no issue in that connection having been raised by the defendant's pleadings, the question of the carrier's responsibility, if any, for failure to deliver at destination, was not in issue. The provisions of the bill of lading control, and this fact is recognized in cases cited by appellant, among which is the case of *The Hellig Olav*, 282 Fed. 534, 537, in which the court says:

"It is agreed that the party issuing the bills of lading was a common carrier. There can be no doubt that as such the ship was liable as an insurer for failure to make the delivery at Copenhagen, unless she was excused by the terms of the bills of lading."

Although, upon its demurrer to the complaint, the defendant made and argued the point that failure of plaintiff to allege that the cause of loss was one for which the carrier was excused from liability, no pleading filed subsequently

by the defendant raised the point, which could well have been alleged in the answer as new matter constituting a defense or counterclaim (Code Civ. Proc., sec. 437, subd. 2). But that would have placed upon the defendant the burden of proof on that issue. ■ If it be assumed that there rested upon the plaintiff the burden of proving that the loss did not result from a cause which would fasten liability upon the carrier, such proof was sufficiently made by the introduction in evidence of the record in the limitation of liability proceedings that were had in the United States District Court for the Southern District of New York, wherein the final decree adjudges that the loss of the cargoes of the "Suduffco" was not done, occasioned, injured or caused with, and were without, the privity or knowledge of the petitioners, and that the petitioners, and each of them, and the said steamship are not liable to any extent, and are forever exempted, exonerated and discharged from all loss, etc. The decree established that the vessel was seaworthy upon sailing and that the vessel was not lost through any negligence on the part of the plaintiff. The decree in that case was *in rem* and is binding upon the defendant and appellant. (*The City of Boston,* 159 Fed. 261; 15 Cal. Jur., pp. 138, 139.)

■ The record in the United States District Court above referred to was properly admitted in evidence and the following cases support this view:

In *Estate of Clark,* 190 Cal. 354, 360 [212 Pac. 622, 625], it is held that a "judgment is binding not only in proceedings upon the same but also upon a different cause of action in so far as it settles and determines questions of fact. . . . It is well settled that a judgment or decree necessarily affirming the existence of any fact is conclusive upon the parties or their privies whenever the existence of that fact is again in issue between them, not only when the subject matter is the same, but when the point comes *incidentally* in question in relation to a *different* matter in the same or any other court." (Citing cases.)

In *Price* v. *Sixth District Agricultural Assn.,* 201 Cal. 502, 510 [258 Pac. 387, 390], quoting from Freeman on Judgments, fifth edition, section 671, pages 1416, 1417, and section 672, page 1418:

" ' . . . a former adjudication may be used for two different purposes, namely, either as a complete bar to the relitigation of the same cause of action, or as conclusive evidence of some fact or issue common to two different causes of action'. . . .

" 'If the existence, validity or construction of a contract, lease, conveyance or other obligation has been adjudicated in one action it is *res judicata* when it comes again in issue in another action between the same parties, though the immediate subject matter of the two actions be different.' " (Citing many California cases.)

The Price case is further authority to the effect that though the causes of action may be different, if the second action involve a right, title or issue as to which the judgment in the first action is an adjudication, estoppel, so far as that right, title or issue is concerned, must likewise extend to every matter which was or might have been urged to sustain or defeat the determination actually made. (See, also, *Henderson* v. *Miglietta,* 206 Cal. 125 [273 Pac. 581].)

An appeal by claimants was taken to the United States Circuit Court of Appeals from the decree last above referred to and by stipulation of the parties the appeal was dismissed. (Tr., p. 75, fol. 224.) This, then, left the decree as if no appeal had been taken, and hence final.

■ The record of the United States District Court was offered in evidence, not by the respondent, but by the appellant, whose trial attorney at first offered a certified copy of the petition of the Transmarine Corporation for limitation of liability; thereupon opposing counsel tendered a certified copy of the final decree of dismissal, stating at the time that he objected to the original petition being introduced in evidence unless other documents in that cause were also admitted. The court ruled as follows:

"If it goes in, it cannot go in part, it must go in in its entirety. . . . I take it that it won't be complete unless all of it goes in for whatever it may be worth."

Appellant's trial counsel then said:

"Then I will introduce also a certified copy of the Commission's report, and under the court's ruling and under protest we will offer the court's decree. . . . "

He then offered in evidence the petition, the commissioner's report, the final decree, and stipulation of parties

as to entry of final judgment ending the liability proceedings. Appellant's trial counsel stated that he would not offer the stipulation dismissing the appeal, upon which the court remarked:

"If any part of it goes in all of it goes in. Whether or not it may or may not become material I don't know, because I don't know what the position of counsel is."

Whereupon appellant's trial counsel said:

"I don't think it does any great harm, and on Your Honor's ruling I will offer that in evidence."

The record discloses no motion to strike out any portion of the documentary evidence relating to the limitation of liability proceeding.

It needs no citation of authority to support the proposition that one is bound by the evidence which he offers—even though he declare the offer to be made by him "under protest". Those words, which sometimes work magic when accompanying the payment of taxes, have no more effect upon one's offer of evidence than having one's fingers crossed at the time. Hence the appellant cannot now be heard to complain that the evidence introduced by him was inadmissible.

We find no merit in appellant's second contention that the plaintiff failed to prove that defendant was a party to the contract of carriage. Identical shipping arrangements in the past had been executed between the parties to this action through the Republic Iron & Steel Company as agent for the appellant shipper, and the evidence upon this point is sufficient to establish an ostensible agency (Civ. Code, sec. 2300; *Robinson* v. *American Fish etc. Co.,* 17 Cal. App. 212 [119 Pac. 388]; *Ford* v. *Lou Kum Shu,* 26 Cal. App. 203 [146 Pac. 199]; *Niles* v. *Gonzales,* 1 Cal. App. 324 [82 Pac. 212]; *Buckley* v. *Silverberg,* 113 Cal. 673 [45 Pac. 804]).

After the issuance of the bills of lading, wherein the appellant was named as consignee, the appellant voluntarily received them without objection and made use of them to its own advantage, whereby it ratified the agency of the Republic Iron & Steel Company, and is bound thereby. (Civ. Code, sec. 2307; 1 Cal. Jur. 770–777.)

Having voluntarily accepted, acted upon and used the contracts for its own benefit, the appellant cannot now incon-

sistently deny privity. (*Emeric* v. *Alvarado,* 64 Cal. 529, 587 [2 Pac. 418]; *Del Campo* v. *Camarillo,* 154. Cal. 647, 657 [98 Pac. 1049]; *Bogart* v. *Crosby & Van Haren,* 80 Cal. 195, 198 [22 Pac. 84].)

■ The appellant's third point, that the claim sued upon was barred by the four-year statute of limitations, is not well taken. The rights and obligations of the parties were fixed by the bills of lading when the same were signed and issued. It is undisputed that this took place on March 13, 1926. The fact that the goods were delivered to the ship before that date is immaterial where the action is founded upon the written instruments; and the action having been commenced on March 11, 1930, section 337, subdivision (1), of the Code of Civil Procedure cannot successfully be raised in bar. (*Collins* v. *Driscoll,* 69 Cal. 550 [11 Pac. 244]; *Jefferson* v. *Wendt,* 51 Cal. 573; *Sherwood & Sherwood* v. *Gill & Lutz,* 36 Cal. App. 707 [173 Pac. 171]; *New* v. *Denison Clay Co.,* 260 Fed. 70, 72.)

■ That the bills of lading were not signed by the shipper is immaterial. (*Elder Dempster & Co.* v. *St. Louis etc. Ry. Co.,* 105 Tex. 628 [154 S. W. 975].)

■ The fourth point raised by appellant is that, part of the haul having been made interstate by rail, the plaintiff, who advanced the money necessary to pay rail carriers, stands in their shoes; that its action as respects rail freight is barred by the three-year limitation contained in Interstate Commerce Act, section 16, subsection 3, subdivision (a), which provides that "all actions at law by carriers subject to this chapter for recovery of their charges, or any part thereof shall be begun within three years from the time the cause of action accrues, and not after". We agree readily with the proposition that the foregoing limitation would be a bar to a *rail carrier* subject to the provisions of the chapter referred to, from bringing an action more than three years after the accrual of its cause of action for charges earned.

The appellant agreed in writing to pay the respondent the freight as stated in the bills of lading, to wit: A total of $1968.75, which is the amount sued for in the first cause of action. As to the second cause of action for $89.58, it was stipulated that "it should not be necessary or required that either party introduce any evidence . . . but . . .

should in all respects be controlled and abide by the determination of the first cause of action'' (Tr., p. 31, fol. 92) for $1968.75 (making the total claim $2,058.33 as found by the court), plus interest.

Without denying that such was its agreement made for considerations, the appellant seeks to theorize a way out of its promise to pay by splitting the total amount of freight into inland and ocean freight. But the appellant has failed to bring the respondent within the provisions of the limitation quoted, by not showing that the respondent is a carrier subject to the jurisdiction of the Interstate Commerce Commission, and hence the limitation is inapplicable and the point untenable. (Interstate Commerce Act, sec. 1 (U. S. Code Ann., title 49, Transportation, p. 10); *United States* v. *Munson,* 33 Fed. (2d) 211, affirmed C. C. A., 4th Cir., 37 Fed. (2d) 681, affirmed Supreme Court (March, 1931); s. c., 283 U. S. 43 [75 L. Ed. 830, 51 Sup. Ct. Rep. 360].)

It is admitted in this case that the water carrier was not acting with the rail carrier under a *common control,* management or arrangement for a continuous carriage or shipment, and it was therefore not subject to the Interstate Commerce Act. (*Wilmington Transp. Co.* v. *California R. R. Com.,* 236 U. S. 151, 153 [59 L. Ed. 508, 35 Sup. Ct. Rep. 276] (see, also, decision in same case, 166 Cal. 741 [137 Pac. 1153], affirmed by the Supreme Court of the United States in case cited); *Ex parte Koehler,* (C. C.) 30 Fed. 867; *In the Matter of the Jurisdiction Over Water Carriers,* 15 I. C. C. 205, 207; *Corona Coal Co.* v. *Secretary of War,* 69 I. C. C. 389.)

The rulings of the trial court upon the admission of certain evidence not hereinabove covered have been reviewed by this court, and no prejudicial error is found therein.

The judgment is affirmed.

Knight, Acting P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 10, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 7, 1932.