STANDARD VARNISH WORKS *v.* STEAMSHIP "BRIS," REDERIAKTIEBOLAGET BORE, CLAIMANT.

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 745. Argued December 13, 1918.—Decided January 13, 1919.

The bill of lading provided that prepaid freight should be considered earned on shipment of the goods and be retained by the vessel-owners, "vessel or cargo lost or not lost, or if there be a forced interruption or abandonment of the voyage at a port of distress or elsewhere;" that in case the ship should be prevented from reaching destination by war or the hostile act of any power, the master might

await removal of the obstacle, discharge the goods at any depot or convenient port, or bring them back to the port of shipment, where the ship's responsibility should cease; and it exempted the carrier from loss "by arrest and restraint of princes, rulers or people." War measures taken by the Government respecting such goods soon after shipment made it impossible to carry them to destination and they were redelivered at the port of shipment without breaking ground. *Held*, that the carrier was not obliged to refund the freight. *Allanwilde Transport Corporation* v. *Vacuum Oil Co., ante,* 377; *International Paper Co.* v. *The Gracie D. Chambers, ante,* 387. P. 398.

THE case is stated in the opinion.

*Mr. Julius J. Frank* and *Mr. Everett P. Wheeler* for Standard Varnish Works:

The bill of lading should be construed as a whole, with reference to the main object—transportation to and delivery at destination. Reasonable effect should be given to it by holding that if the contract should not be performed by the shipowner he is not liable in damages to the shipper, but shall not retain the freight.

The action of the Government constituted "commercial frustration of the adventure," which dissolves the contract. *Horlock* v. *Beal,* 114 L. T. 193; *Admiral Shipping Co.* v. *Weidner, Hopkins & Co.,* 114 L. T. 171; *Tamplin S. S. Co.* v. *Anglo-Mexican Co.,* 115 L. T. 315. It therefore dissolves the agreement that freight is earned on shipment of the goods. The word "irrevocable" in the contract in *The Gracie D. Chambers,* 253 Fed. Rep. 182 [ante, 387], is not used in this contract. The same rule which excuses failure to deliver, under the restraints of princes clause, also deprives of the right to retain prepaid freight. As there is a failure of consideration, advances made under the contract can be recovered. *Spring Co.* v. *Knowlton,* 103 U. S. 49; *American Union Tel. Co.* v. *Union Pacific R. R. Co.,* 1 McCr. 188.

Clauses 6 and 7 of the bill of lading are to be strictly

construed in favor of the shipper. The stipulation that prepaid freight is to be retained applies only if the vessel sails and is lost. *Christie* v. *Davis Coal & Coke Co.*, 95 Fed. Rep. 837, 838; 110 Fed. Rep. 1006; *Great Indian Ry. Co.* v. *Turnbull*, 53 L. T. 325; *Ex parte Nyholm*, 29 L. T. 634; *The Tornado*, 108 U. S. 342; *Kelly* v. *Johnson*, 3 Wash. C. C. 45; Scrutton, Charter Parties, 8th ed., Art. 137. The final clause and clause 7 likewise apply only after the voyage has been begun. While they excuse failure to perform, they do not entitle the vessel to claim freight. *Kelly* v. *Johnson, supra.* This construction is in accord with *The Carib Prince*, 170 U. S. 655; *The Caledonia*, 157 U. S. 124.

Prepayment of freight was subject to the implied condition that performance would continue to be legal. The contract was one not for delivery of the goods to the ship, but for transportation to and delivery at destination. The reception was only an incident.

While the carrier may throw the risk of the loss of goods upon the shipper, it cannot throw upon him the risk of losing his advance freight through prevention of the voyage by act of the law. The shipper may insure against the former, but not the latter. The contention that there is no distinction in the construction of clauses against repayment of advance freight, whether the voyage has been begun or not, is untenable. When the voyage is begun it is subject to perils of the sea, and in case of war to breaking up; but while the vessel is in her home port there are no perils.

The carrier might have performed the contract if it had acted with due diligence. It received the cargo and issued its bill of lading a fortnight before the proclamation requiring a license was made. The shipper did not release the carrier from its obligation except on repayment of prepaid freight. The government regulations requiring licenses cannot be urged as a justification unless the carrier

tenders the prepaid freight. *Non constat* but that the ship-per would have been willing to await a revocation of the regulations or that, sooner or later, an exception might have been made in favor of the shipment. The carrier must either perform, declare its readiness before breach to perform on removal of the obstacles arising without its fault, or ask cancellation of its obligation upon refund of what it had received as compensation for performance.

The carrier might have provided for the contingency which actually arose. But it did not attempt to exact an agreement that prepaid freight might be retained even though it should unload the cargo at the shipper's ex-pense without the ship's having left her moorings, which would hardly have succeeded with any shipper. Such an agreement cannot be said to have been contemplated. The bill of lading does not authorize the carrier under any circumstances to unload and return any cargo before commencing the voyage, even upon tender of prepaid freight.

The case is to be decided on the merits of each clause as presented, leaving the parties to work out the problem of insurance for themselves. *The Prussia,* 93 Fed. Rep. 837; *The Montana,* 129 U. S. 397.

If the bill of lading be construed as contended for by the carrier, the clauses relied upon are against the policy of the law of this country and are invalid. *The Kensing-ton,* 183 U. S. 263; *Chicago &c. Ry. Co.* v. *Solan,* 169 U. S. 133, 135; *Calderon* v. *Atlas S. S. Co.,* 170 U. S. 279, 282; *Adams Express Co.* v. *Croninger,* 226 U. S. 491, 509. The clauses in question also would be void under the Harter Act, §§ 1, 2, which prohibits the shipowner from limiting his liability for acts done before the inception of the voy-age.

*Mr. Clarence Bishop Smith,* with whom *Mr. Charles S. Haight* was on the brief, for Steamship "Bris," etc.

Mr. Justice McKenna delivered the opinion of the court.

This case was submitted with Nos. 449 and 450 [*Allanwilde Transport Corporation* v. *Vacuum Oil Co., ante,* 377], and No. 479, [*International Paper Co.* v. *The Gracie D. Chambers, ante,* 387], being a suit in admiralty, as they were, to recover prepaid freight upon a shipment of articles of merchandise which were not carried to destination, the carriage having been prevented by action of the Government. Judgment was rendered for libelant and the case taken to the Circuit Court of Appeals.

The case is here on certificate from that court, induced, as the court recites, by its decision in the case of *International Paper Co.* v. *The "Gracie D. Chambers," supra,* to review which a certiorari has been granted by this court.

The facts as certified are these:

"On August 17th, 1917, varnish belonging to libelant was shipped by it in the port of New York for Gothenburg, Sweden, upon the steamship Bris, consigned to the Allmanna Svenska Elektriska A. B. Westeras, and the agents for said ship thereupon delivered to libelant a bill of lading, of which a copy is annexed hereto, which formed a contract between libelant and claimant in reference to said goods. Particular reference is made to Clause 6, Clause 7 and the next to last clause of the bill of lading. The libelant paid in advance the freight mentioned in said bill of lading. At the time of said shipment, shippers were required to obtain export licenses from the British Government on cargo of this class, and were also required by the United States Statute to obtain export licenses from the United States Government in connection with such articles as the President should, by proclamation, designate. At the time that said shipment was made the President had designated certain articles as to which licenses

must be thus procured when destined for Gothenburg, Sweden, but varnish was not included among them. At the time of shipment, the libelant presented a license which it had procured from the British Government. On August 27th, 1917, the President made a further proclamation, effective August 30th, 1917, whereby shippers of varnish and all other cargo destined for Gothenburg, Sweden, were required to procure licenses before the same could be exported. The libelant thereupon made application for such a license, and the claimant held its vessel in port until October 8th, to see if such licenses could be procured, before beginning the discharge of the cargo. Unless shipments were accompanied by the aforesaid licenses they were not allowed by the men-of-war belonging to the Allies to proceed to destination. On or about October 8th the United States, acting through the Exports Administrative Board, refused the application for a license to transport the goods mentioned in the libel, and other cargo destined for Gothenburg, and claimant thereupon began to unload the cargo of the Bris and concluded the discharge on October 22d, 1917. The claimant continued ready and willing to carry said cargo forward if a license therefor were obtained by libelant. The libelant took redelivery of the cargo at the port of shipment and made a demand upon the claimant that the claimant should return the freight paid, which demand was refused. The question aforesaid is as follows:

"1. Did the bill of lading contract justify the carrier, under the facts stated, in refusing to refund the prepaid freight?"

Clause 6 of the bill of lading is as follows: ". . . Prepaid freight is to be considered as earned on shipment of the goods and is to be retained by the vessel's owners, vessel or cargo lost or not lost, or if there be a forced interruption or abandonment of the voyage at a port of distress or elsewhere; . . ." The material parts of clause

7 are as follows: "Also, in case the ship shall be prevented from reaching her destination by . . . war . . . or the hostile act of any power," the master may wait until the impeding obstacle be removed "or discharge the goods into any depot or at any convenient port or bring her cargo back to port of shipment where the ship's responsibility shall cease . . ."

Clause 2 should be considered. It exempts the carrier from loss by certain causes or "by arrest and restraint of princes, rulers or people."

We think the case is within the principle of the decision of the cases submitted with it. In this case, however, it is urged that the clause relied on by the ship to justify the retention of the advance of freight does not contain the word "irrevocable" and that upon that word stress was put by the Circuit Court of Appeals and presumably by this court. The word undoubtedly is one of intensity but its absence does not remove the meaning or intention of its associates. Their declaration is that "prepaid freight is to be considered as earned on shipment of the goods and is to be retained by the vessel's owners, vessel or cargo lost or not lost." The declaration is clear, and, in anxiety of purpose, uses some tautology. The words "prepaid freight is to be considered as earned" declare a completed right and carried the power of retention without the expression of the latter. And the expression of the right and the power cannot be put aside. Counsel, however, would make them purposeless and would consider the bill of lading as if they were not contained in it, and urges that the only effect of the refusal of clearance to the ship was the "commercial frustration of the adventure" working a dissolution of the contract, absolving from performance but requiring the restitution of the payments that were made as the consideration of performance.

We are not insensible to the appealing force of the contentions nor to the strength of the argument advanced

to support them, but the contract determines against them and the reasons for assigning to it that effect we have given in our opinions in the other cases.

We, therefore, answer the questions certified in the affirmative.

*So ordered.*