## GOVERNMENT OF KINGDOM OF BELGIUM v. THE LUBRAFOL et al.

### No. 439.

District Court, E. D. Texas, Beaumont Division.

May 17, 1941.

Sullivan & Cromwell, Allen Dulles, Lord, Day & Lord and George de Forrest Lord, all of New York City, Andrews, Kelley, Kurth & Campbell, Robert F. Campbell, and St. John Garwood, all of Houston, Tex., and Samuel C. Lipscomb, of Beaumont, Tex., for libellant.

John E. Green and Walter D. Caldwell, both of Houston, Tex., John Tilney Carpenter, of New York City, C. T. Duff, of Beaumont, Tex., and S. L. Herold, of Shreveport, La., for claimant Gulf Oil Corporation.

BRYANT, District Judge.

Belgium was invaded by the armed forces of Germany on May 10, 1940, since which date a state of war, as was proclaimed by the President of the United States in his Proclamation No. 2405, dated May 11, 1940, has existed between Germany on the one hand and Belgium on the other hand.

On November 15, 1940, the Government of the Kingdom of Belgium filed this libel against Motor Tanker Lubrafol, her tackle, etc., and against all persons intervening to claim an interest therein, seeking to acquire possession of said vessel. On the day this libel was filed, the said vessel was in the possession of the Gulf Oil Corporation and was lying at Port Arthur, Texas, within the territorial waters of the United States of America, and within the jurisdiction of this Court. On November 15, 1940, a warrant for the arrest of the vessel was issued, placed in the hands of the Marshal for the Eastern District of Texas, and on the same day executed by that officer.

The libellant alleged that on or about the 17th day of May, 1940, the Government of the Kingdom of Belgium duly requisitioned, for urgent needs of state, pursuant to the laws of Belgium, all vessels flying the Belgian flag, and that such requisition included said Motor Tanker Lubrafol, which was at that time owned by the Belgian Gulf Oil Company, S. A., and that thereafter, on or about June 7, 1940, the master of said Motor Tanker Lubrafol was notified of and recognized said requisition, and that after said requisition was made, the Belgian Gulf Oil Company, S. A., as owner of said vessel, recognized said requisition and acquiesced therein for a period of approximately four months, and operated said vessel for its own account, pursuant to a license from libellant.

On December 7, 1940, the Gulf Oil Corporation, a corporation, existing under and by virtue of the laws of the State of Pennsylvania, United States of America, intervened herein as claimant, for the interest of itself as owner of said vessel, and thereafter filed its answer, admitting that on the 17th day of May, 1940, the said Motor Tanker Lubrafol, was owned by the Belgian Gulf Oil Company, S. A., and, among other things, denying that said vessel had been duly requisitioned by the Government of the Kingdom of Belgium pursuant to the laws of Belgium, denying that the constitution, laws, and regulations of the government of the Kingdom of Belgium, with respect to requisitioning said vessel, were carried out or effectuated by the libellant, its agents or representatives, denying that the master of said vessel or the Belgian Gulf Oil Company, S. A., had recognized such requisition or acquiesced therein, and alleged, among other things, that the said vessel had at all times been in the sole and exclusive possession of its owner, and operated and controlled for account and in behalf of its owner, and at the sole risk and expense of its owner, and that on or about November 1, 1940, for a good and valuable consideration, said vessel was duly sold and transferred by the Belgian Gulf Oil Company, S. A., to claimant Gulf Oil Corporation, and thereafter on November 8, 1940, and prior to the filing of this libel, said vessel ceased to be of Belgian registry and was duly and validly registered under the flag of the Republic of Panama, and prayed that the libel be dismissed, etc.

From the evidence I find the following facts:

### Findings of Fact

1. I find that the laws of the Kingdom of Belgium in effect May 17, 1940, with reference to requisitions of vessels in time of war, were:

(a) Chapter VIII of the Law of May 12, 1927, which was promulgated May 12, 1927, published in the Moniteur Belge May 25, 1927, and effective June 4, 1927; and, (b) Chapter VII of the Royal Decree of May 3, 1939, being Royal Decree 2562, concerning the execution of the Law of May 12, 1927, on military requisitions, effective June 1, 1939, and published in the Moniteur Belge September 10, 1939; which laws consisting of statute and royal decree were introduced in evidence by libellant in the original French text as Exhibit No. 44, and according to the certificate of the Belgian Ambassador, a part of the same exhibit, are translated into English as follows:

(a) "Ministry of National Defense Law on Military Requisitions Albert, King of the Belgians, etc.

"Chapter VIII. Maritime Requisitions.

"Article 34. In time of war, any Belgian commercial or other sea-going vessel, may be requisitioned as to use and as to ownership.

"Requisitions will be carried out (without prejudice to the provisions of Articles 9 and 10 of the present law):

"1. In the name of the Minister of Railways, Marine, Post and Telegraph either by the Director General of the Marine or his delegate, or by the consul of Belgium acting on behalf of the Minister of Foreign Affairs.

"2. In the name of the Minister of National Defense, either by an officer delegated for this purpose or by one of the officials designated in paragraph 1. above. A royal decree will determine the conditions of requisition.

"Article 35. The requisition entails for the captain or master the obligation to discharge, upon the demand of the requisitioning authority and at the place designated by the latter, passengers as well as goods and merchandise not requisitioned.

"The penal and disciplinary Code for the merchant marine and the fishing fleet will remain exclusively applicable during the whole duration of the requisition.

"Article 36. The requisition is addressed to the captain, or master or to the owner. It mentions the place and the date of the delivery of the vessel to the government.

"Article 37. In case of refusal to comply with the requisition, the requisitioning authority will draw up a proces-verbal of the refusal. This proces-verbal will be admissible in evidence as to its content. The requisitioning authority may take immediate possession of the vessel and unload, if need be, the goods and merchandise not requisitioned.

"The sea letter will be withdrawn and will not have further effect except for the benefit of the requisitioning authority.

"Article 38. Within fifteen days after the requisition the requisitioning authority fixes the rate of indemnity to be accorded and notifies the owner or the cap-

tain thereof. Within three months after such notification the latter shall give notice if they accept or if they refuse the indemnity which is proposed to them. In the event of their failure to indicate their refusal within this period the indemnity will be considered as fixed.

"Article 39. Disputes with respect to the indemnity as well as the application of the requisition are submitted to an arbitral committee of five members presided over by the Director General of the Marine or, in case of the inability of the latter, by an officer designated by the Ministry of Railways, Marine, Post and Telegraph.

"One or more alternate members will be designated; they may replace members who are absent or have resigned.

"The original or alternate members of the committee will be designated by royal decree. Among the original members and among the alternate members there will be a military representative.

"The seat of the committee is at Antwerp but in case of necessity a ministerial decree may change the seat of the committee.

"The decisions of the committee are taken by majority vote of the members present. In case of a tie the vote of the president is controlling.

"The deliberations of the committee will be. binding if three of its members are present.

"The committee shall not reach decisions except after having heard the interested parties who will have appeared before it either in person or by special attorney in fact.

"It may seek special advice and particularly the testimony of experts.

"The committee need not conform to any particular formalities or procedure. It notifies its decision to the interested parties by ordinary letter to be delivered against acknowledgment of receipt.

"The decision may be appealed to the appropriate court of appeal within three months of the notification of the decision of the arbitral commission.

"Article 40. Interested parties have the opportunity of refusing to accept the competence of the committee. They must do this by stating their objections explicitly within the period of three months as provided in Article 38. In such case, the dispute will be transferred to the magistrate of the canton of the port of registry, and if there is no port of registry in Belgium, before the magistrate of the first canton of Antwerp. Article 16 of the present law remains applicable.

"Article 41. The committee gives its advice on all questions relative to the management of Belgian vessels employed for State transport or requisitioned which are submitted to it by the Minister of Railways, Marine, Post and Telegraph.

"Article 42. The refusal to comply with a requisition duly made by the authorities indicated in Article 34 will be punished in conformity with Articles 26 to 29 of the present law, without prejudice to the application of the disciplinary and penal code of the merchant marine, of the law of September 20, 1933, and other maritime laws.

"Article 43. Any Belgian or foreign individual who outside of the territory of the kingdom may have committed a violation contemplated by the preceding article may be prosecuted before any Belgian criminal tribunal."

(b) "Ministry of National Defense

"Leopold III, King of the Belgians, etc.

"Chapter VII.—On Maritime Requisitions.

"Article 141. In time of war, any commercial or other Belgian vessel, may be requisitioned as to use and as to ownership by the authorities designated in Article 34, Chapter VIII of the Law of May 12, 1927.

"Article 142. The requisition entails for the captain or the master the obligation to discharge, upon the demand of the requisitioning authority and at the place designated by the latter, passengers as well as goods and merchandise not requisitioned. (Art. 35 Chapter VIII of the law of May 12, 1927)

"Article 143. The requisition is effected by a writing addressed to the captain or master or to the owner. It mentions the place and the date of the delivery of the vessel to the government.

"It indicates expressly whether the requisition is effected as to use or as to ownership.

"The use of the requisition booklet provided for in Article 7 of the present regulation is not required.

"Article 144. At the moment of the delivery there is prepared a descriptive state-

ment of the vessel and an inventory of the equipment and of the foodstuffs retained as well as of the goods requisitioned. The proces-verbaux are drawn up both by a representative of the requisitioning authority and by the captain, master or owner who, in case of disagreement, indicate their observations on these proces-verbaux. These documents are drawn up in two originals of which one remains in the hands of the representative of the vessel and the other is delivered to the requisitioning authority who forwards it without delay to the Minister of Transport, with a view to settlement.

"To this proces-verbal are attached the informations and documents necessary to determine who are the real owners of the vessel (on this point see the provisions of Article 85 concerning non-seagoing vessels).

"Goods being transported cannot be requisitioned except subject to the exemptions granted by the international conventions.

"Requisitions may be applied to the ship's officers and to the crew who are required to give their assistance except where it is a question of arming the ship as an auxiliary cruiser.

"Article 145. In case of refusal of captain, master, commander or owner to comply with the requisition, the requisitioning authority will draw up the proces-verbal of refusal referred to in Article 37 of the law of May 12, 1927 and will transmit it to the judicial authority. The requisitioning authority may take immediate possession of the vessel and unload, if need be, the goods and merchandise not requisitioned.

"The sea letter will be withdrawn and will not have further effect except for the benefit of the requisitioning authority.

"Article 146. In case of refusal by the captain, master or commander to aid in the drawing up of the proces-verbal referred to in Article 144, the requisitioning authority will ask the assistance of the maritime commissioner if the requisitioning takes place in local territorial waters.

"If the requisitioning is effected by a consul, the latter may have the assistance either of an expert or of a ministerial officer domiciled in the community of the port where the requisition takes place.

"Article 147. Within fifteen days after the requisition the Minister of Transport fixes the rate of indemnity to be accorded and notifies the owner or the captain thereof.

"Within three months after such notification the latter shall give notice in writing if they accept or if they refuse the indemnity which is proposed to them.

"In the event of their failure to indicate their refusal within this period the indemnity will be considered · as fixed.

"Article 148. If the party affected refuses within the prescribed period the indemnity which is allocated to him the dispute is immediately carried by the Minister of Transport before the arbitral Committee instituted under the provisions of Article 39 of the law of May 12, 1927 which will reach its determination in the manner indicated in that article.

"The decision of the arbitral Committee may be appealed.

"The appeal is indicated by writ of the clerk to the president of the arbitral Committee within three months from the notification of the decision and is carried before the competent appeal Court.

"As soon as the appeal Court has rendered its decision the president of the arbitral Committee transmits the docket to the Minister of Transport for the settlement of indemnities with a copy of the decision.

"Article 149. Parties affected have the opportunity of refusing to accept the competence of the arbitral Committee. They must do this by writing addressed to the president of the arbitral Committee within three months from the notification of the decision of this Committee.

"In this event, the president of the Committee shall send without delay the entire docket to the Minister of Transport who apprises the competent magistrate of the dispute.

The ordinary procedure then takes its course and the Minister proceeds to the settlement of the indemnity as soon as the judicial action is terminated."

2. I find that the only steps taken by the Government of the Kingdom of Belgium to effectuate a requisition of the Motor Tanker Lubrafol in pursuance of such laws were:

(a) On May 17, 1940, at 10:45 A. M., a telephone conversation, called a telephonic telegram, was had by agents or officers of the Government of the Kingdom

of Belgium, then at Brussels, with the Belgian Embassy at London, England, the written record of which as made in the Belgian Embassy in London, translated into English by claimant, reads as follows:

"It is necessary to provide immediately for the requisition by the State of our commercial vessels. STOP. In the meantime, until the events permit us to expedite the official requisition forms to the Consuls of the Ports of berth of our vessels, these Consuls should be requested by cable to immediately make the temporary requisition of all Belgian vessels staying in a port of their jurisdiction. It is understood that while waiting for precise instructions on the voyages to be carried out, the vessels can navigate for the account of the owner for a voyage authorized by the Administration of the Marine. STOP. It will be up to our Ambassador in London to inform our Consuls that they have to fulfill this formality. The informations which he will find through Lloyd's London will permit him to locate exactly all our vessels. The formula for temporary requisition may be drafted as follows, the form to be submitted to the interested captain and a copy to be retained for the information of the Administration of the Marine: The Consuls of Belgium at (town) notify the captain of (name) that his vessel is requisitioned by the General Director of the Marine acting in the name of the Minister of Communications and of the Minister of National Defense. STOP. The requisitioned vessels can not be time chartered and any proposed voyage must be submitted for prior consent to the General Director of the Marine by intervention of the Consul of the Port where the vessel stays. A copy of the present order of requisition has been handed over to the captain who has signed the original for execution. STOP. To be signed by the Consul of Belgium, and for the owner by the captain in question."

(b) The Belgian Embassy at London, England, by cable repeated this telephone conversation to the Belgian Embassy in Washington, D. C., and the Washington Embassy in turn repeated the same by letter to the Belgian Consul at New York.

(c) On June 7, 1940, in his office in New York City, Charles Hallaert, Belgian Consul General at New York, delivered to Pierre J. Barbe, Master of the Motor Tanker Lubrafol, then lying in the New York harbor, a letter, No. 1383, which, translated into English, reads as follows:

"The undersigned, Charles Hallaert, Consul General of Belgium at New York, hereby notifies Captain Pierre J. Barbe of the S.S. 'Lubrafol' that his ship is requisitioned by the Director General of the Navy, acting in the name of the Minister of Communications and the Minister of National Defense. The requisitioned ship can not be chartered. Any voyage proposed must first be submitted to the approval of the Director General of the Navy, through the office of the Consul of the home port of the ship. A copy of the present order of requisition will be given to the captain who will have signed the original, for execution—New York, June 7, 1940."

(d) On the bottom of this letter Pierre J. Barbe signed his name as captain of the Vessel Lubrafol.

3. I find that under the laws of the Kingdom of Belgium, the telephone conversation, called a telephonic telegram, had from Brussels to London on May 17, 1940, did not and does not constitute an order of or direction for or a requisition of any vessel, but was only an attempt to effect a temporary contact with vessels under Belgian registry pending issuance of a requisition, and, among other things, libellant failed to effect a valid requisition, because it did not (1) issue an order in the name of the officials designated directing requisition, nor (2) serve upon the owner or master by a consul, or other authority provided for, notice in writing that the ship had been requisitioned, indicating whether requisition was effected as to use or as to ownership, and mentioning the place and the date for delivery of the ship to the Government, nor (3) within the time prescribed by Belgian law, nor at any later date, fix compensation for the owner.

4. I find from admissions made by libellant that it claimed the Vessel Lubrafol to have been requisitioned only as to use, and not as to ownership.

5. I find that The Government of the Kingdom of Belgium, its agents and officers, never at any time had actual possession of the Motor Tanker Lubrafol.

6. I find that at all times in question in this litigation the Motor Tanker Lubrafol, her tackle, etc., has been continuously

in the actual possession of its owner and under the control and direction of its owner and its officers and agents, for its own account, and that at all times in question in this litigation the Motor Tanker Lubrafol, her tackle, etc., and its crew, have been by the master and officers of said vessel controlled by and on behalf of its owner, and that the owner has paid all the expenses of operating said vessel.

7. I find that the evidence introduced does not sustain the allegations of the libel that the master of the vessel or the Belgian Gulf Oil Company, S. A., as owner, ever at any time acquiesced in said purported requisition or recognized the same, and I further find that the evidence does not establish any facts which estop the claimant Gulf Oil Corporation to deny that the vessel had been duly requisitioned under the laws of the Kingdom of Belgium, or to deny that the constitution, laws, and regulations of the Kingdom of Belgium with respect to requisitioning vessels were carried out or effectuated.

8. I find that this libel, on the docket of this Court, is a companion case with three others, Nos. 440, 441, and 442, filed by the same libellant against, respectively, the Motor Tankers Good Gulf, Belgian Gulf, and Spidoleine, in each of which companion cases Gulf Oil Corporation intervened as claimant, and although not consolidated, all four cases involved the same issues of law and fact and were tried at one time upon the same evidence, and the Clerk of this Court has found and certified the taxable costs submitted by claimant in all four cases to be $2,936.60.

I conclude as a matter of law:

## Conclusions of Law

1. Libellant the Government of the Kingdom of Belgium never made any substantial compliance with the provisions of the Belgian law relating to the requisitions of vessels.

2. Libellant the Government of the Kingdom of Belgium has shown no right of possession of the Vessel Lubrafol, her tackle, etc.

3. The libellant is not entitled to possession of the Vessel Lubrafol, her tackle, etc., and the libel should be dismissed, at libellant's cost.

4. Under the facts of this case, the failure of the libellant to comply with the Belgian laws with reference to requisi-

tioning vessels does not entitle libellant to possession, and its claim to right of possession can be neither enlarged nor sustained upon any ground of equitable estoppel or acquiescence.

5. The writ of arrest or attachment heretofore issued and served should be dissolved, vacated and quashed, and the Marshal should be directed to restore the Vessel Lubrafol, her tackle, etc., to the claimant Gulf Oil Corporation, in whose possession said vessel was when taken into custody by said officer under process of this court.

6. Claimant should recover of and from libellant and its stipulators for costs in this libel, one-fourth of the taxable costs as certified by the Clerk, to-wit, the sum of $734.15.

7. These findings of fact and conclusions of law should be recorded at length in the minutes of this court.

Let the decree be entered accordingly.