## THE LAURENT MEEUS.

### SOCIETE PURFINA MARITIME v. 8598.09 LONG TONS OF DIESEL OIL et al.

### MITSUBISHI SHOJI KAISHA, Ltd., v. THE LAURENT MEEUS et al.

#### No. 1265.

District Court S. D. California, Central Division.

Feb. 24, 1942.

McCutchen, Olney, Mannon & Greene, of Los Angeles, Cal., and Bigham, Englar, Jones & Houston, of New York City (Farnham P. Griffiths and Harold A. Black, both of Los Angeles, Cal., and T. Catesby Jones, of New York City, of counsel), for libelant and cross-respondents.

Hunt, Hill & Betts, of New York City, and Arch E. Ekdale, of San Pedro, Cal. (John W. Crandall and Geo. Whitefield Betts, Jr., both of New York City, Arch E.

808

Ekdale, of San Pedro, Cal., and Frank J. Zito and Wm. H. Peck,. Jr., both of New York City, of counsel), for respondents and cross-libelant.

Martin J. Weil, of Los Angeles, Cal., for claimant.

HARRISON, District Judge.

This is a proceeding in admiralty arising over a contract of affreightment. Libelant seeks to recover under the provisions of its contract providing for the prepayment of freight money upon completion of loading and telegraphic notice of signing of bill of lading. The voyage was frustrated, due to the interference of the authorities of the United States and Belgium. Respondents and cross-libelant refused to pay the freight money upon the completion of loading and due notice and defends against the libel on many grounds that will hereinafter be discussed in some detail. Cross-libelant counters with a claim for damages. This proceeding is an outgrowth of the invasion of Belgium and World War II.

■ The paramount question in this case is whether the tanker Laurent Meeus was requisitioned by the Belgian Government on June 6th, 1940, or November 16th, 1940. Libelant contends it was requisitioned on the earlier date, while cross-libelant, Mitsubishi Shoji Kaisha, Ltd., claims the later date. Without repeating the facts, I have concluded that the actual and complete requisitioning occurred on November 16, 1940. I feel that the requisition was not completed until such time as actual possession was taken by the exiled Belgian Government. While the Belgian Government placed restrictions on the movement of the vessel after June 6, 1940, such restrictions were not in the nature of a control that accompanies a full and complete requisition, but the acts of a sovereign controlling and regulating the movement of vessels carrying the Belgian flag, as well as to act as trustee for the owners, who by reason of the invasion of Belgium, were unable to protect their own property. The fact that the charter fees collected covering the first voyage to Japan belonged to the vessel owners and the Belgian Ambassador received the same for the owners, negatives cross-libelant's contention. To me, a requisition is ineffectual for any purpose until the requisitioning government has actually taken possession.

Until possession is taken, the requisition is much like an unexecuted writ. The very word itself indicates a completed requisition. It is one thing to requisition an article, but requisitioned signifies a completed or executed requisition. I believe my conclusions are in conformity with the trend of the American authorities. See The Navemar, 303 U.S. 68, 58 S.Ct. 432, 82 L.Ed. 667, and cases therein cited.

Cross-libelant cites The Kabalo, 67 Lloyd's List L.R. 572. (In direct conflict with Government of Kingdom of Belgium v. The Lubrafol, D. C., 43 F.Supp. 403). The facts in this case differ materially in that when the Laurent Meeus was libeled in Texas for crew wages, the Belgian authorities ignored the same, while in The Kabalo the authorities stepped into the picture and claimed sovereign immunity. The fact that the Belgian Government did not do likewise in the case of the Laurent Meeus, signifies to me it did not consider or deem the vessel requisitioned at that time.

I have assumed that the date of requisition is a controverted issue in this action as all parties have dwelt at considerable length on this issue, part of which was due to questions propounded by the court. However, it appears to me that the cross-libelant has precluded itself from raising this particular issue because of certain allegations contained in its pleadings. In fact, the cross-libel is predicated upon the theory that the private owners of the vessel owned, operated and controlled the same.

Cross-libelant contends that the vessel was unseaworthy. I feel that this defense is mere window dressing. I find that the voyage was not frustrated by any defects existing in the engines of the vessel. I also find that the crew troubles were solely due to the action of the Belgian Government in changing the course of the vessel, which necessitated the signing up of a new crew. The Malcolm Baxter, Jr., 277 U.S. 323, 48 S.Ct. 516, 72 L.Ed. 901.

I further find that the failure of the vessel in breaking ground was due to two causes:

· ■ 1st. The cross-libelant's failure to comply with the terms of the charter in failing to pay the freight money as provided therein. It is self-evident that the captain was entitled to this money before he could be expected to break ground, and

the evidence indicates he needed $15,-000 of this money in order to do so. While the libelant did not strictly comply with the terms of the charter by notifying cross-libelant by telegraph until October 11, 1940, cross-libelant did not withhold payment on that ground, but attempted to alter the terms of the charter party by withholding payment until the vessel sailed. I believe cross-libelant's conduct in this respect estops it from complaining about any delay in the sailing of the vessel. In fact, I am of the opinion that libelant was fully justified in not sailing until cross-libelant had complied with its part of the contract. See 17 C.J.S., Contracts, p. 797, § 344: Restatement of the Law on Contracts, § 269; Williston on Contracts Chapter XXIX.

2nd. The evidence clearly discloses that sailing was prevented by the authorities of the United States and of Belgium, except for a period of a few days, when it was impossible to break ground, because of the necessity of signing up a new crew, which was occasioned by the Belgian authorities by changing the course of the vessel from that originally contemplated in the charter. The charter party contract recognized the possibility of such interferences and held the libelant harmless under such circumstances, and at the same time held cross-libelant responsible for the charter fee, which was at the time deemed earned. At first the delay was considered of a temporary character until the requisition on November 16th. All parties hereto recognized that on November 16th the voyage became completely frustrated.

The Court cannot overlook the fact that during this period the international situation was in a state of flux. The actions of the cross-libelant recognize this, otherwise, it would not have insisted that the vessel sail before paying the freight money.

I am forced to agree with the contention of the libelant that the charter freight money, under the decisions of the Supreme Court of the United States have been earned, and the refusal to pay the same is a breach of the charter party contract. The following cases appear to me as conclusive: The Allanwilde, 248 U.S. 377, 39 S.Ct. 147, 63 L.Ed. 312, 3 A.L.R. 15; The Bris, 248 U.S. 392, 39 S.Ct. 150, 63 L.Ed. 321; and The Malcolm Baxter, Jr., supra; The Gracie D. Chambers, 248 U.S. 387, 39 S.Ct. 149, 63 L.Ed. 318.

Cross-libelant attempts to distinguish the case at bar from the above cited cases. In principle, I cannot distinguish the same. Naturally, I feel complimented in the indirect suggestion that I overrule the Supreme Court, but the appeal in this respect should be directed to the reviewing courts, where it may find more fertile fields for its efforts.

I am impressed with the contention that the payment of the charter fee under the circumstances of this case is an unjust enrichment of libelant. If under the authorities I could consistently do so, I would reduce libelant's claim by the amount it would have been forced to expend in completing the charter. My course has been chartered for me and I must not deviate. However, cross-libelant's argument would have been a little more impressive, if it was not at the same time endeavoring to impose a penalty of $75,000 on libelant. It is like the kettle calling the pot black.

Cross-libelant argues at length that inasmuch as the charter party contract was contingent upon the approval of the Belgian Government, that it was in effect a party to the contract and its withdrawal of approval acted as cancellation of the same. If such were true, then the same should have been made a condition of the charter. In view of the fact that cross-libelant thereafter entered into said agreement precludes them from complaining in this respect. It is bound by its terms as written.

Cross-libelant further contends that libelant had no intention of sailing after October 15th. In my opinion this is not true. As hereinbefore stated, I am of the opinion that the failure to break ground was due, in part, to the failure to pay the charter fee as stipulated. Furthermore, I find that Captain Lippens was not only willing but anxious to make the intended voyage. His testimony bears this out. I wish to say that I consider Captain Lippens a courageous, capable, truthful mariner and have accepted his testimony as true and have placed great reliance upon the same.

I cannot follow counsel for cross-libelant in their contention relative to the policies of Mitsubishi or the custom of oil tankers to sail promptly. It recognized the possibility of requisitioning when it entered into the charter party and naturally vessels do not lie around unnecessarily when loaded with valuable cargo. To my

mind, neither of these contentions prove or disprove anything. Again, the parties are bound by the terms of their written contract.

I find against cross-libelant in the matter of the form of the bill of lading. Mitsubishi is not in a position to complain about a bill of lading prepared by its own agent at its request.

The Court is very appreciative of the able manner in which this case has been presented by very able counsel.

In this memorandum opinion, I have not attempted to analyze and distinguish between the volume of authorities submitted. I have simply set forth my findings and conclusions in order that counsel may have a guide in preparing formal findings.

Libelant is entitled to judgment as prayed for and counsel for libelant is directed to expeditiously submit its proposed findings and decree in accordance with this memorandum opinion.