**MEDITERRANEAN AGENCIES, INC.,**
Libelant,

v.

**RETHYMNIS & KULUKUNDIS LTD.,**
Respondent.

United States District Court
S. D. New York.
June 6, 1960.

Hill, Betts & Nash, New York City, for libelant; Donald B. Allen, New York City, of counsel.

Poles, Tublin & Patestides, New York City, for respondent; John G. Poles, New York City, of counsel.

HERLANDS, District Judge.

The charter party between the libelant-charterer and the respondent-owner contains an "any dispute" arbitration clause. The charterer moved to compel arbitration under 9 U.S.C. § 4.

A number of items in controversy between libelant and respondent are admittedly arbitrable; and, as to them, the parties are willing to have a submission to arbitrators. The one and only item as to which the parties disagree concerning its arbitrability is a $38,750 claim by the charterer for a "refund of unearned [prepaid] freight" for transporting a cargo of scrap iron to Japan. (See Libelant's Exh. C, p. 2.)

The charterer fully prepaid the freight in New York; the ship sank or stranded on May 5, 1959; and the charterer demanded refund of the prepaid freight. When the demand was refused, the charterer requested that his claim be arbitrated.

The respondent's position is that this particular claim is not arbitrable because a special provision typewritten in the margin of the printed form of charter expressly states that the prepaid freights are "discountless and non-returnable, vessel and/or cargoes lost or not lost." Respondent argues that it is clear and plain beyond question that the charterer is not entitled to return of freight; and, hence, there is no bona fide dispute presented for resolution by the arbitrators as to that item.

Libelant-charterer claims that the vessel "sank" (Allen affidavit, sworn to April 21, 1960, p. 1) and that the loss was caused by "unseaworthiness" of the vessel (Libel and Complaint, par. "Seventh"). Respondent-owner claims that the facts demonstrate beyond question "that there was no violation of the warranty of seaworthiness," that the vessel "stranded on the rocks * * * due to poor visibility and weather," and "that the stranding occurred due to a peril of the sea and accident" (Poles affidavit, sworn to May 10, 1960, pp. 3–4, and Exhs. "B," "C," "D" and "E" attached thereto.)

Respondent has over-simplified the applicable legal principles. The enforceability of the particular clause—that prepaid freight is not to be returned notwithstanding the loss of ship or cargo—depends upon circumstances.

In The Louise, D.C.D.Md.1945, 58 F. Supp. 445, 446 cargo owners were permitted to recover $35,000 prepaid freight notwithstanding a bill of lading provision [1] that it was not to be returned "ship lost or not lost" and despite the fact that the voyage was frustrated. The effective cause of the frustration of the voyage and of the damage to the cargo owners was the unseaworthiness of the vessel due to gross negligence of the shipowner and not (as claimed by the owner) the requisition of the vessel by the United States government. The court concluded (at page 450) with the observation:

"To permit the shipowner to receive and retain the prepaid freight under the circumstances here would be tantamount to a fraud on the cargo owners."

Similarly, where the frustration of the voyage is due to the shipowner's abandonment of the voyage because of his inability to obtain sufficient cargo and freights to render the voyage profitable and he sends the ship on a different voyage, the cargo owner is entitled to recover the prepaid freight despite a provision in the bill of lading "that the freights prepaid will not be returned, goods lost or not lost." Silva v. Bankers Commercial Corporation, 2 Cir., 1947, 163 F.2d 602, 607.

On the other hand, a bill of lading or charter party containing a clause that prepaid freight is not to be refunded though the vessel be lost or the voyage not completed has been given controlling effect where the voyage was broken up by legal impossibility of performance, without fault on the part of the shipowner and by causes beyond control of the carrier. Allanwilde Transport Corp. v. Vacuum Oil Co., 1919, 248 U.S. 377, 39 S.Ct. 147, 63 L.Ed. 312; International Paper Co. v. The Gracie D. Chambers, 1919, 248 U.S. 387, 39 S.Ct. 149, 63 L.Ed. 318; Standard Varnish Works v. The Bris, 1919, 248 U.S. 392, 39 S.Ct. 150, 63 L.Ed. 321. In these three cited cases, the ship was seaworthy and the voyage was frustrated [2] by a government embargo,

[1] In pertinent part, the provision (characterized as "very customary" by the court) read that "in any and all cases, full freight to destination * * * shall be deemed to be completely earned upon receipt of the goods by the carrier" without deduction or refund in whole or in part "ship and/or cargo lost or not lost, and even if the voyage be changed, frustrated, abandoned or otherwise broken up" (58 F.Supp. at page 448).

[2] In Allanwilde, [248 U.S. 377, 39 S.Ct. 148] the seaworthy vessel encountered a severe storm that carried away her boats, caused leaks, and forced her to seek a port of refuge. While in that port, the government refused clearance to her

"a restraint of princes or governments." See Silva v. Bankers Commercial Corporation, 2 Cir., 1947, 163 F.2d 602, 607; Gilmore & Black, The Law of Admiralty (1957) 203, n. 111.

In The Malcolm Baxter, Jr., 1928, 277 U.S. 323, 48 S.Ct. 516, 72 L.Ed. 901, the ship was initially at fault in that she was unseaworthy. However, while in a port of safety undergoing repairs, the government placed an embargo, which frustrated the voyage. After completing repairs, the ship delivered her cargo to another intermediate port, whence it was re-shipped to destination. It was held that the cargo owners were entitled to recover for the damages to the cargo due directly to her unseaworthy condition, but were not entitled to recover for the prepaid freight because the deviation was involuntary and the legally established efficient cause of the deviation and breaking up the voyage was not the unseaworthiness but the subsequent embargo.

■■ Unseaworthiness alone, or deviation caused by it, displaces the contract of affreightment so far as damage is caused by unseaworthiness. Such deviation is classed with voluntary deviations. In that case, the shipowner would be responsible for the cargo as insurer and could not claim the benefit of the non-funding clause.

An emergency sufficient to render the deviation involuntary cannot arise out of circumstances deliberately planned nor from gross negligence.

Reverting to the facts at bar, this court is of the opinion that the operation of the clause—whether or not the charterer is entitled to a return of the prepaid freight—depends upon proof of the foundation fact, that is, whether the loss of the ship and cargo was caused by unseaworthiness (as the libelant-charterer claims) or by a peril of the sea (as respondent-owner claims). It is open to the parties to adduce proof before the arbitrators on the issue of "unseaworthiness" versus "peril of the sea." The resolution of this basic question will, in turn, determine the applicability of the clause in controversy.

In view of the foregoing, it is concluded that the libelant-charterer's claim for refund of unearned freight is arbitrable. Libelant's motion to compel arbitration is granted. So ordered.

---

because she was bound for the war zone. The charter party and bill of lading clause provided: "Freight earned, retained and irrevocable, vessel lost or not lost." The carrier was not obligated to refund the prepaid freight.