INTERNATIONAL PAPER COMPANY *v.* THE SCHOONER "GRACIE D. CHAMBERS," &c., PAYNE, CLAIMANT.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 479.   Argued December 12, 13, 1918.—Decided January 13, 1919.

The bill of lading contained the provisions "Restraints of princes and rulers excepted," "Freight for the said goods to be prepaid in full without discount, retained and irrevocably ship and/or cargo lost or not lost." Sailing was delayed indefinitely by the Government's refusal to clear sailing vessels destined for the war zone, which went into effect after the shipment commenced and before the freight was prepaid against delivery of the bill of lading. *Held*, that the carrier was relieved of the duty to transport the goods and need not refund the prepaid freight. *Allanwilde Transport Corp.* v. *Vacuum Oil Co., ante,* 377.   P. 391.

253 Fed. Rep. 182, affirmed.

THE case is stated in the opinion.

*Mr. William C. Cannon,* with whom *Mr. R. L. von Bernuth* was on the brief, for petitioner:

Freight is not earned until the vessel "breaks ground" or starts upon her voyage. *The Tornado,* 108 U. S. 342; *Curling* v. *Long,* 1 Bos. & P. 634. A change of berth pending completion of necessary preliminaries to sailing is not a commencement of the voyage. *Gilchrist Transp.*

*Co.* v. *Boston Ins. Co.*, 223 Fed. Rep. 716; *Wood* v. *Hubbara*, 62 Fed. Rep. 753. Where the voyage has been begun but the cargo has not been delivered, the rule in this country is that, in the absence of an express stipulation, prepaid freight may be recovered. It became the practice to insert in both American and English bills of lading clauses providing that prepaid freight might be retained "ship lost or not lost," for the purpose of making the legal effect of such a stipulation conform with the English decisions. But the English cases hold that even where there is such a stipulation the recovery depends upon whether or not the voyage had commenced and the freight had begun to be earned. *Ex parte Nyholm; Re Child*, 29 L. T. 634; *Weir & Co.* v. *Girvin*, [1900] 1 Q. B. D. 45; *Great Indian Ry. Co.* v. *Turnbull*, 53 L. T. 325; *Allison* v. *Bristol Marine Ins. Co.*, 1 App. Cas. 209; Scrutton, Charter Parties, 8th ed., Art. 137. And, in the absence of a controlling agreement, prepaid freight is treated in the same manner as freight payable. *Allison* v. *Bristol Marine Ins. Co.*, *supra*. These cases do not construe the phrase "ship lost or not lost" to extend the already existing doctrine or to bar recovery of prepaid freight in any event; they confine the rule to losses caused by risks of the voyage, and hold that where freight had not commenced to be earned at the time it became due and payable it can be recovered back. *Coker & Co.* v. *Limerick S. S. Co.*, 34 T. L. Rep. 18; 118 L. T. 726, does not overrule them, and, if it did, should not be followed. *The Kimball*, 3 Wall. 37, 45. The only issue there litigated was, what portion of the charter hire became payable where part of the cargo had been loaded, and as to which some, but not all, of the bills of lading had been signed.

Under our law, the parties may stipulate to make prepaid freight an unconditional payment in consideration of loading the goods on board. *National Steam Nav. Co.* v. *International Paper Co.*, 241 Fed. Rep. 861, 863; *The*

*Queensmore,* 53 Fed. Rep. 1022. In both of these cases, however, the vessel had actually sailed and the earning of the freight had begun. The "ship lost or not lost" clause became operative. The presumption is that freight is payable only on so much of a cargo as is delivered, and to take the case out of the general rule language in the bill of lading which is unmistakable in its effect must be shown. *Christie* v. *Davis Coal & Coke Co.,* 95 Fed. Rep. 837. The burden is on the shipowners to show that the language employed was intended to have the effect claimed by them. With the exception of the *Coker Case,* no decision can be found, even in England, in which prepaid freight has been held not to be recoverable because of an express stipulation to that effect, where the ship has not actually started on her voyage. The bill of lading in the case at bar evinces no intention that the freight was to be paid as a consideration for receiving the goods on board. The courts have construed similar clauses as not preventing a recovery of prepaid freight. *Ocean S. S. Co.* v. *U. S. Steel Products Co.,* 239 Fed. Rep. 823; *The Allanwilde,* 247 Fed. Rep. 236, 238.

The restraint of princes clause only exempts the ship from liability for failure to carry and does not relate to freight moneys. *Jackson* v. *Union Marine Ins. Co.,* L. R. 10 C. P. 125, 145; *Kelly* v. *Johnson,* 3 Wash. C. C. 45. Furthermore, there was a frustration of the enterprise before the freight was paid or payable. The action of the Government was such an interference as to excuse performance and justify abandonment of the contract. *Geipel* v. *Smith,* L. R. 7 Q. B. 404; *The Kronprinzessin Cecilie,* 244 U. S. 12; *The Styria,* 186 U. S. 12; *Admiral Shipping Co.* v. *Weidner, Hopkins & Co.,* 115 L. T. 814, 817, 819, 822; *Countess of Warwick S. S. Co.* v. *Nickel Societe Anonyme,* [1918] 1 K. B. 372; *Horlock* v. *Beal,* [1916] 1 A. C. 486; *Atlantic Fruit Co.* v. *Solari,* 238 Fed. Rep. 217; *Jackson* v. *Union Marine Ins. Co., supra;*

*Embiricos* v. *Sydney, Reid & Co.*, [1914] 3 K. B. 45. The freight moneys had not become due when the embargo was put into effect, and the petitioner was absolved from the obligation to pay them on the shipment. The consideration for the subsequent payment totally failed, and petitioner is entitled to the return of such moneys. *Card* v. *Hine*, 39 Fed. Rep. 818.

The signed bill of lading was delivered and the freight paid five days after the government order had been put into effect. The contract was wholly executory, and its performance having been prohibited by law, moneys paid on account thereof cannot be retained. *Spring Co.* v. *Knowlton*, 103 U. S. 49; *Taylor* v. *Bowers*, 1 Q. B. D. 291, 300; *Pullman's Car Co.* v. *Transportation Co.*, 171 U. S. 138, 151; *Harriman* v. *Northern Securities Co.*, 197 U. S. 244, 296; *Cleveland, C. C. & St. L. Ry. Co.* v. *Hirsch*, 204 Fed. Rep. 849.

*Mr. Robinson Leech*, with whom *Mr. Charles Burlingham* was on the brief, for respondent.

MR. JUSTICE McKENNA delivered the opinion of the court.

Libel in admiralty on the schooner "Gracie D. Chambers," her tackle, etc., to recover the sum of $5,845, prepaid freight on a cargo of paper loaded on the schooner for shipment from New York to Bordeaux, France, by the International Paper Company. Judgment went for libelant in the District Court. It was reversed by the Circuit Court of Appeals by a divided court. To this action this writ is directed.

The facts as found by the Circuit Court of Appeals are as follows:

"September 14, 1917, the schooner Gracie D. Chambers began to load a general cargo in the Port of New York

to be delivered at Bordeaux. Between September 27 and 29 the libelant Paper Company shipped 120 tons of print paper.

"September 28 at 4:25 p. m. the Treasury Department at Washington telegraphed the Collector at the Port of New York to withhold clearance of all sailing vessels, any part of whose voyages would bring them within the danger zone. There was no official publication of this embargo, but it was put into effect beginning September 29 by the refusal of clearance to such vessels as they applied for them. Both the shippers and the shipowners had heard rumors of the embargo as early as October 1.

"October 3 the schooner moved out to an anchorage at the Red Hook Flats to save wharfage charges and to await clearance.

"October 4 the freight was paid against delivery of the bill of lading.

"October 5 the master applied to the Collector for clearance, which was refused. He then applied to the authorities at Washington to except this schooner from the embargo on the ground that it had begun to load before the order was made. Refusal to allow an exception in her favor was not definitely and finally made until October 10. Subsequently the cargo was discharged and the owners refused to return the freight paid.

"The bill of lading contained the following provisions:

"'Restraints of Princes and Rulers excepted.'

"'Freight for the said goods to be prepaid in full without discount retained and irrevocably ship and/or cargo lost or not lost.'"

The case was submitted with Nos. 449 and 450 [*Allanwilde Transport Corporation* v. *Vacuum Oil Co., ante,* 377], and its primary question is, as there, the sufficiency of the clauses in the bill of lading as a defense. In those cases we decided that the bill of lading expressed the contract of the parties and hence determined their rights and liabil-

ities. And it is the safer reliance, the accommodation of all the circumstances that induced it. It was for the parties to consider them, and to accept their estimate is not to do injustice but accord to each the due of the law determined by their own judgment and convention, which represented, we may suppose, what there was of advantage or disadvantage as well in the rates as in the risks.

It is asserted, however, that the vessel in this case did not break ground and that this fact distinguishes the case from Nos. 449 and 450. The fact does not deflect the principle of those cases. It was not made to depend upon the fact of breaking ground, but upon the bills of lading which provided for the payment of freight upon the shipment of the goods and the right to retain it though the goods were not carried, their carriage being prevented by causes beyond the control of the carrier.

Therefore, upon the authority of those cases, the judgment of the Circuit Court of Appeals in this case is

*Affirmed.*