## THE OLGA S.

Circuit Court of Appeals, Fifth Circuit.
April 10, 1928.

No. 5185.

**1. Shipping �köw105—Master's accepted delivery of logs brought to ship's side put them at ship's risk pending loading.**

Where logs were brought to ship's side pursuant to master's request, and were receipted for by master without any question as to time or manner of delivery and without suggesting that delivery of any logs be delayed, accepted delivery thereof had the effect of putting such logs at ship's risk pending loading.

**2. Shipping �köw132(5¼)—Evidence held to sustain finding loss of logs delivered at ship's side was fault or negligence of ship and not peril of sea.**

Evidence *held* to sustain finding that loss of mahogany logs delivered in rafts at ship's side for loading pursuant to contract of affreightment resulted from fault or negligence chargeable against ship and not a result of a peril of the sea or negligence of shipper in rafting logs.

**3. Shipping ⊦köw132(3⅛)—Carrier, after accepted delivery of logs at ship's side for loading, had burden of proving loss was due to peril of sea.**

Where master of ship accepted delivery of mahogany logs brought to ship's side for loading under contract of affreightment, carrier had burden of proving that loss of logs thereafter was due to a peril of the sea or other cause for which ship was not responsible.

**4. Shipping ⊦köw120—Ship accepting logs for loading is liable for loss contributed to by it, though peril of sea also contributed.**

In case fault or negligence of ship contributed to loss of mahogany logs delivered at ship's side for loading after accepted delivery thereof, ship was liable for such loss, even though a peril of the sea was a contributing cause thereof.

Appeal from the District Court of the United States for the Eastern District of Louisiana; Louis H. Burns, Judge.

Libel by the Talge Mahogany Company against Hans J. Hansen, master and claimant of the steamship Olga S. Decree for libelant (10 F.[2d] 801), and respondent and surety appeal. Affirmed.

Geo. H. Terriberry, Jos. M. Rault, and Harry F. Stiles, Jr., all of New Orleans, La. (Terriberry, Young, Rault & Carroll, Jos. M. Rault and H. F. Stiles, Jr., all of New Orleans, La., on the brief), for appellants.

Henry Grady Price and Henry P. Dart, Jr., both of New Orleans, La. (Dart & Dart, Henry P. Dart, Jr., and Henry Grady Price, all of New Orleans, La., on the brief), for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

WALKER, Circuit Judge. The appellee libeled the steamship Olga S. for the amount of damages sustained in consequence of the loss of 34 mahogany logs delivered alongside that vessel at Frontera, Mexico, on April 1, 1922, under a contract of affreightment, the pertinent provisions of which are: "The logs to be delivered alongside steamer in reach of ship's tackle, in the water. Logs to be delivered at Frontera free of expense to the steamer, as fast as steamer can receive, Sundays and legal holidays excepted."

The evidence showed as follows: The vessel arrived at Frontera on March 28, 1922, and anchored about two miles off shore, in the Frontera open roadstead. Appellee's logs were then assembled in a canal at Frontera ready for shipment. Upon the ship's arrival at Frontera, appellee's representative, accompanied by the ship's agent, went aboard and spoke to the captain in reference to lifting appellee's logs. Upon the captain being informed that some of the logs weighed over three tons, he said he did not know whether his booms could lift over three tons or not, whereupon the appellee's representative and the ship's agent told the captain that a boom owned by the ship's agent could be obtained, and the captain agreed to put on appellee's logs if the appellee's representative paid the expense of furnishing the ship agent's boom, and appellee's representative agreed to pay that expense, which was incurred. During the afternoon of March 30th the captain in writing notified appellee's representative that the former was then ready to start loading appellee's logs, and requested that the logs be brought alongside. The next morning, Friday, after the ship's agent's boom had been installed, two rafts of logs were delivered alongside the ship, and were loaded on the ship that day. During that day the base of the ship's agent's boom broke, with the result that that boom had to be repaired, and was out of commission from about noon, Friday, until late Saturday afternoon. During the forenoon of Saturday two rafts of logs were towed out by a motorboat and delivered alongside the ship, and the master gave receipts therefor to appellee's representative. Each raft was made up by driving into each log an iron pin, having an eye at the upper end and called a "dog" or "ring dog," through which a chain was passed. When the rafts were brought alongside, they were made fast to the

ship by means of ropes. The loading of the logs proceeded on Saturday, a number of logs weighing more than three tons being put aboard by means of the ship's boom. The appellee had no part in the loading, which was in charge of the ship. When the stevedores engaged in loading the logs stopped work about 5 o'clock Saturday afternoon, 35 of appellee's logs remained in the water, alongside the ship, and 34 of them went adrift during the night and were lost. The appellee's representative left the ship about 5 o'clock Saturday afternoon, returning to shore on the boat which had brought the rafts to the ship's side. He was not asked to resume charge of any of the logs or to have them carried back into the canal. That night the wind increased, and there was a heavy swell, which after midnight caused the logs alongside to bump violently against the side of the ship and the propeller, causing the pins in some of the logs to be pulled out, with the result that logs were lost as above stated. The weather conditions during that night were not unusual.

The claim asserted by the libel was resisted on the grounds: (1) That the logs were not delivered to the ship in accordance with the agreement of the master and appellee's representative, and were at the risk of the appellee when they were lost; (2) that the logs were not delivered to the ship in accordance with the provision of the contract of affreightment, "as fast as steamer can receive," but faster, with the result that they remained at the risk of the appellee, the shipper; and (3) that the logs were lost either through a peril of the sea or through the negligence of the appellee in improperly rafting the logs. The court ruled against those defenses, and rendered a decree in favor of the appellee for the stipulated value of the lost logs and interest.

[1] In this court the appellant relied on each of the above-mentioned defenses. As the logs were brought to the ship's side pursuant to the master's express request, and were receipted for by the master without any question being raised as to the time, speed, or manner of the delivery and without any suggestion that the delivery of any of the logs be delayed until the completion of the repairs on the special boom, the accepted delivery of the logs had the effect of putting them at the ship's risk. Bulkley v. Maumkeag Steam Cotton Co., 24 How. 386, 16 L. Ed. 599; The Gracie D. Chambers (C. C. A.) 253 F. 182; Id., 248 U. S. 387, 39 S. Ct. 149; 63 L. Ed. 318. The master's unconditional acceptance of the delivery of the logs was inconsistent with the contention that they remained at the shipper's risk until actually loaded on the ship.

[2-4] The evidence was not such as to require the conclusion that the sole cause of the loss of the logs was either a peril of the sea or the negligence of the appellee in rafting the logs. The burden was on the appellant to prove that the loss of the logs after the accepted delivery of them was due to a peril of the sea or other cause for which the ship was not responsible. The Folmina, 212 U. S. 354, 361, 29 S. Ct. 363, 53 L. Ed. 546, 15 Ann. Cas. 748. The ship was liable if its own fault or negligence contributed to the loss of the logs, though a peril of the sea also was a contributing cause of the loss. Compania La Flecha v. Brauer, 168 U. S. 104, 118, 18 S. Ct. 12, 42 L. Ed. 398. The evidence warranted findings that logs went adrift in consequence of the heavy swell causing them to be thrown violently against the side of the ship, with the result that they were separated from the raft; that the danger from that source could have been avoided by moving the logs astern or away from the ship's side; that the master could have insured the safety during the night of the logs which had not been loaded when the stevedores quit work Saturday afternoon by having those logs towed back to the canal and moored until the loading could be resumed; and that appellee's representative could and would have had those logs moved to a place of safety if the ship's master had even raised the question of the ship's responsibility for the logs after they were delivered alongside and before they were put aboard, or had suggested that, because of improper rafting, the speed in delivering logs alongside the ship, or for any other reason the logs remained at the risk of the shipper after the master had receipted for them. It does not appear from the record that a finding that the loss of the logs was contributed to by a fault or negligence chargeable against the ship was against a preponderance of the evidence. It well may be concluded that the master was at fault in failing either to use available means to safeguard the logs or to suggest that, after the accepted delivery of them, they remained subject to the control and at the risk of the shipper. Appellant's counsel invoked the decision in the case of Munson Steam Ship Line v. E. Steiger & Co. (C. C. A.) 136 F. 772, in support of the contention that the loss of the logs was due either to a peril of the sea or to improper rafting. That case was like the instant one in that mahogany logs rafted in the same way

broke away after they had been delivered alongside a ship in the open roadstead from 2½ to 3 miles offshore from Frontera. The report of that case does not indicate that there was evidence tending to prove that fault or negligence chargeable against the ship contributed to the loss which was in question in that case. We think it is a sufficient reason for not reaching the same conclusion which was reached in that case that the evidence in the instant case justified the conclusion that the loss now in question was contributed to by fault or negligence chargeable against the ship.

We conclude that the decree was not erroneous. It is affirmed.