**UNITED STATES of America,**
**Appellant,**

**v.**

**WATERMAN STEAMSHIP CORPORA-**
**TION et al., Appellees.**

**No. 24450.**

United States Court of Appeals
Fifth Circuit.

June 27, 1968.

Vernol R. Jansen, Jr., U. S. Atty., Mobile, Ala., David L. Rose, Robert E. Kopp, John C. Eldridge, Howard J. Kashner, Alan S. Rosenthal, Attys., Dept. of Justice, Washington, D. C., Edwin L. Weisl, Jr., Asst. Atty. Gen., for appellant.

T. K. Jackson, Jr., Mobile, Ala., W. Boyd Reeves, Mobile, Ala., Armbrecht, Jackson & DeMouy, Mobile, Ala., of counsel, for appellees.

Milton C. Grace, Washington, D. C., amicus curiae.

Before GODBOLD and SIMPSON, Circuit Judges, and McRAE, District Judge.

WILLIAM A. McRAE, Jr., District Judge.

This appeal is from a judgment entered in the court below requiring the United States to make certain contributions allegedly due as the result of a General Average Adjustment.

In August of 1959 the S.S. JEAN LA FITTE, owned by Appellee, Waterman Steamship Corporation (Waterman), was carrying government cargo under a contract with the Military Sea Transportation Service (MSTS). While en route the vessel became stranded on a shoal off the coast of France. In order to refloat the ship, numerous losses were voluntarily sustained for the common benefit of all the interests in the voyage: the ship, the cargo, and the freight.[1] In accordance with the terms of the Space Charters a General Average situation was declared and put into effect by the master of the vessel. The United States disputed the contribution required on its behalf and Waterman initiated this action to recover.

The sole issue presented to this Court is whether the 80% payment, made by the United States at the time of sailing, should be considered "earned" at that time or on delivery of the goods. If the freight is earned upon sailing, then the risk of contribution is on the cargo, and the United States would be responsible for a proportionate share of the losses suffered. On the other hand, if the freight is not considered earned until delivery of the goods, then the risk is on the shipowner, and the vessel must bear the expense.

■ It is a well settled principle of American maritime law that freight is not earned unless and until the goods are delivered to their destination. Alcoa S.S. Co. v. United States, 338 U.S. 421, 422, 70 S.Ct. 190, 94 L.Ed. 225 (1949). The parties by contractual agreement may alter this principle. E.g., International Paper Co. v. The "Gracie D. Chambers", 248 U.S. 387, 39 S.Ct. 149, 63 L.Ed. 318 (1919). Thus, the narrow issue presented in the case at bar is whether the terms of the charter agreements established the freight to have been earned upon the sailing of the vessel.

The provisions of the Space Charter agreements between Waterman and MSTS dealing with payment of freight read as follows:

(a) At anytime after the sailing of the vessel from the port of loading, the Contractor may submit properly certified invoices or vouchers with respect to each Shipping Order together with a copy of such Shipping Order and shall thereupon be paid a sum equal to eighty per cent (80%) of the compensation payable under Article 3 for such shipment. The balance of

[1]. "Freight" in maritime law refers to the compensation which the shipowner is to receive for carrying the goods. Gilmore & Black, The Law of Admiralty 221 (1957).

the compensation payable for such Shipping Order, except as provided in subparagraph (c) below, shall be paid upon the delivery of the cargo to the consignee or as otherwise directed by the Government at the port of destination and the submission by the Contractor of properly certified invoices or vouchers with respect to the Shipping Order, such invoices or vouchers to be substantiated by certified copy of the manifest covering the shipment together with a copy of the Shipping Order. * * *

(c) In the event there is any shortage or damage not definitely known to be the fault of the Government or its agents, the amount of such shortage or damage shall be estimated and withheld from the amount otherwise due, pending final determination of the amount of shortage or damage and the Contractor's liability therefor. If, upon final determination the amount of shortage or damage for which the Contractor is liable is more than the amount of compensation withheld, such excess shall be paid by the Contractor to the Government or shall be deducted by the Government from other amounts otherwise payable to the Contractor. However, if upon final determination of the amount for which the Contractor is liable, such amount is less than the amount withheld, the Contractor shall be paid such difference forthwith; * * * (R. 236–238).

■ Waterman contends that by agreeing to the provision of the charter requiring an 80% payment on sailing the United States accepted the responsibility for 80% of the freight interest in its cargo. The acceptance of such a responsibility is not implicit in the agreement. In order to overcome the principle of American maritime law that freight is earned on delivery, the parties must do so by express words in the contract, or by words that are sufficiently intelligible to that end. The Laurent Meeus, 133 F.2d 552, 558 (9th Cir. 1942). An example of such wording is set out in International Paper Co. v. The "Gracie D. Chambers", 248 U.S. 387, 391, 39 S.Ct. 149, 150 (1919): " 'Freight for the said goods to be prepaid in full without discount retained and irrevocably ship and/or cargo lost or not lost.' "

■■ Prior to trial the parties stipulated that parol evidence could be introduced to interpret the terms of the agreement. The district court permitted that evidence to come in at trial and relied heavily on it in arriving at the decision. Waterman S.S. Corp. v. United States, 258 F.Supp. 425, 429-430 (S.D. Ala.1966). The question of whether parol evidence should be admitted in order to determine the meaning of a contract is a matter for the court to determine and it is not of course bound by the stipulation of the parties. Where the terms of the contract are unambiguous the determination of its meaning is a question of law and should be decided without resort to extrinsic evidence.

Taken as a whole the parol evidence supports the position of the government that the provision in question was not drawn to vary the general provisions of American maritime law. Much of the expert testimony presented on behalf of Waterman was by individuals who had no experience with MSTS Space Charters and who based their conclusions on British rather than American law. British maritime law, contrary to the American view, treats prepaid freight as earned and does not require any agreement to that effect. National Steam Navigation Co. Ltd. v. International Paper Co., 241 F. 861, 862 (2d Cir. 1917). Although the government failed specifically to contradict the evidence offered by these experts, there was testimony presented to show that between July 1, 1950, the effective date of the agreements involved, and November, 1959, both parties treated Article 4

as providing that freight was to be earned on delivery. This previous conduct, in the absence of any intervening change, is convincing evidence as to the intent of the parties.

The MSTS Space Charter is a standard form contract for the carriage of government cargoes. This contract replaced the Department of the Army's standard Transportation Corps charter party form in July of 1950. The predecessor of the present Article 4, Article 6 of the old Army space charter, also provided that 80% of the freight was payable on loading. Unlike Article 4, the previous charter expressly provided that freight was "completely earned" on loading of the vessel.[2] The omission of this language from the present charter is certainly a significant factor in determining the intention of the parties at the time the contract was signed.

■ The provisions of the charter agreements and the parol evidence submitted, taken as a whole, are insufficient to establish an intention on behalf of the parties to vary the general principle of American maritime law that freight is earned on delivery. Thus, the risk of the cargo was on the shipowner and the United States is not required to pay a proportionate share of the freight.

Reversed and remanded for entry of an Order not inconsistent with this Opinion.

2. Department of the Army, Space Charter Form

ARTICLE 6. *Payment.* Full freight to the discharging port named in the voyage commitment order for the space covered by such order shall be considered completely earned when the vessel is loaded and the owner shall be entitled to all freight and charges due hereunder whether actually paid or not and to receive and retain them irrevocably under all circumstances whatsoever, ship and/or cargo lost or not lost, whether or not the cargo is damaged or unsound, and the voyage broken up or abandoned, and whether on outbound or return voyages. The owner shall be paid, upon the submission of properly certified invoices or vouchers with respect to each voyage commitment order the price stipulated herein as follows: Upon the sailing of a loaded vessel from a ...... Coast port the contractor shall be paid a sum of equal to 80% of the compensation payable hereunder for such voyage; the balance of the compensation payable for such voyage commitment order shall be paid upon telegraphic confirmation or other satisfactory proof of the delivery of the cargo in apparent sound condition except for shortage or damage for which the charterer or its agents are known to be responsible. * * * (R. 217, 218).