**TRANS–OCEANIC PEACE CORPORA-TION, Plaintiff,**

v.

**INDIA SUPPLY MISSION and Farrell Lines, Inc., Defendants.**

**No. 70 Civ. 3466.**

United States District Court,
S. D. New York.

April 1, 1971.

Kenneth Heller, New York City, for plaintiff; George T. Delaney, New York City, of counsel.

Baker, Nelson, Williams & Mitchell, New York City, for defendant India Supply Mission; Robert E. Meshel, New York City, of counsel.

Kirlin, Campbell & Keating, New York City, for defendant Farrell Lines, Inc.

## OPINION

EDWARD WEINFELD, District Judge.

On June 23, 1969, a charter party [1] was entered into by the plaintiff shipowner and the defendant, India Supply Mission, as voyage charterer for the shipment of a quantity of bagged urea from a United States Gulf port to India. Under its terms, the shipowner was obligated to provide a "tight, staunch and strong" vessel that was "in every way fitted for the voyage to India," and to carry the defendant's cargo from "one or two safe berths, or one or two safe United States Gulf ports" to "one safe port on the West Coast of India." The charter party also provided "90% of the freight shall be paid in U.S. Dollars upon receipt by the India Supply Mission of Notice from the Consignee of safe arrival of vessel and cargo at first port of discharge in India. Balance of 10% of freight with any adjustment * * * shall be paid promptly but not later than a period of 90 days from the date of completion of discharge * * *." Although the plaintiff ship-

---

1. Thereafter the parties entered into an addendum to the charter party which is not relevant to the issue here presented.

owner never discharged the cargo at the port of destination, as required by the terms of the charter party, it now seeks recovery of pro rata freight. Each side moves for summary judgment, and there being no dispute as to the material facts, the matter is ripe for disposition under Rule 56.

In August 1969, the defendant charterer, India Supply Mission, caused delivery aboard plaintiff's vessel of approximately 9,220 metric tons of bagged urea at the ports of Baton Rouge and New Orleans, Louisiana, and plaintiff issued bills of lading acknowledging receipt of the cargo. The vessel sailed from New Orleans on August 31, 1969, bound for the port of discharge in India. Once at sea, the vessel experienced a series of mechanical breakdowns and was forced to put into the port of Mobile, Alabama, for repairs. She again set sail from Mobile on September 14, 1969, but early in October a second breakdown occurred and the vessel was towed to Port of Spain, Trinidad, for further repairs. There she was seized by several creditors and detained by the courts in Port of Spain upon plaintiff's refusal or inability to advance or guarantee payment of towing, repair and port charges. After approximately six months of detention, during which the plaintiff neither satisfied the attachment of its vessel nor made any arrangements to resume the interrupted transportation of the defendant's cargo to its destination in India, the vessel was sold on March 19, 1970, after due notice to plaintiff, at a foreclosure sale to the highest bidder,

Farrell Lines, Inc., also named as a defendant herein. Thereafter Farrell Lines, Inc., on April 3, 1970, entered into a separate and distinct charter party with the India Supply Mission as charterer, and pursuant thereto the cargo was transported by Farrell Lines and delivered to its destination in India in July 1970.

The defendant India Supply Mission seeks summary judgment and dismissal of the complaint on the ground that plaintiff failed to perform its obligation to carry the cargo to its destination, a condition precedent to recovery of any freight charges. The defendant cross-moves for summary judgment to recover what it terms pro rata freight for loading time and for carrying the cargo from the Louisiana Gulf ports to Trinidad.

■■■ It is a well settled rule of maritime law that freight is not earned unless and until the goods are delivered to their destination.[2] The rule may be altered by contractual arrangement of the parties,[3] but otherwise exceptions to the rule are few. The rule does not apply where, although the bill of lading provides that freight shall be payable upon discharge of the cargo at the port of destination, the shipper voluntarily accepts delivery at an intermediate port, whereupon the shipowner is entitled to pro rata freight;[4] or the shipper expressly assumes the risk that delivery of the goods to their prescribed destination may prove to be impossible;[5] or the shipper makes a separate agreement

2. Alcoa S.S. Co. v. United States, 338 U.S. 421, 422, 70 S.Ct. 190, 94 L.Ed. 225 (1949); The Tornado, 108 U.S. 342, 348, 2 S.Ct. 746, 27 L.Ed. 747 (1883); Caze v. Baltimore Ins. Co., 7 Cranch. 358, 11 U.S. 358, 362, 3 L.Ed. 370 (1813); Poor on Charter Parties, § 30, at 82–83 (5th ed. 1968).

3. International Paper Co. v. The "Gracie D. Chambers", 248 U.S. 387, 392, 39 S. Ct. 149, 63 L.Ed. 318 (1919); Allanwilde Transp. Corp. v. Vacuum Oil Co., 248 U.S. 377, 385–387, 39 S.Ct. 147, 63 L.Ed. 312 (1919); United States v.

Waterman S.S. Corp., 397 F.2d 577, 578 (5th Cir. 1968); Hirsch Lumber Co. v. Weyerhaeuser S.S. Co., 233 F.2d 791, 794 (2d Cir.), cert. denied, 352 U.S. 880, 77 S.Ct. 102, 1 L.Ed.2d 80 (1956); Standard Varnish Works v. The Bris, 248 U.S. 392, 39 S.Ct. 150, 63 L.Ed. 321 (1919).

4. See Propeller Mohawk, 8 Wall. 153, 75 U.S. 153, 161, 19 L.Ed. 406 (1868); Poor on Charter Parties, § 30, at 84 (5th ed. 1968).

5. See Owens v. Breitung, 270 F. 190, 191 (2d Cir. 1920).

with the shipowner for transshipment or other disposition of the goods upon premature termination of a charter voyage short of the named port of delivery.[6]

Plaintiff clearly does not come within any of the exceptions noted. However, it seeks to establish another exception based on what it describes as the "novel" fact situation here presented —the coincidence that eventually the cargo reached its destination aboard the same vessel upon which it was loaded at Louisiana. Plaintiff, however, played no part in its ultimate delivery. This was accomplished by the vessel's new owner, Farrell Lines, Inc., pursuant to a separate and independent charter party with the India Supply Mission for transshipping the cargo from Trinidad to India. The cargo's delivery was accomplished despite not because of the plaintiff. Not only did plaintiff's breach of obligation to provide a seaworthy vessel result in a six-months' delay in delivery, but upon the facts here presented its conduct may be deemed an abandonment of the cargo.[7] During the period that the vessel was detained at Port of Spain, Trinidad, the crew was repatriated, and when after six months the plaintiff had failed to satisfy the outstanding legal attachment obtained by various creditors, the vessel was finally sold at public auction. Plaintiff was in no position to meet its obligation to carry the cargo on to India when the defendant India Supply Mission entered into a separate charter party with Farrell Lines to complete delivery; on the contrary, plaintiff admits that the charter party was terminated upon the sale of the vessel in Trinidad, and there is no basis upon which to predicate any new agreement, either express or implied from the conduct of the original charter parties.[8] Indeed, the evidence is persuasively to the contrary. The letter of November 20, 1969, from defendant's attorneys to the shipowner indicates that notice of the latter's inability to complete carriage of the cargo to India was not given to the charterer until more than two months after the vessel had experienced its second breakdown, and that the shipowner had by then made no specific arrangements to tow the vessel or transship the cargo to India.[9] In the same letter the demand was made upon the plaintiff "that you immediately satisfy your obligations under the Contract of

---

6. *See* Cargo & Tankship Management Corp. v. India Supply Mission, 336 F.2d 416, 419 (2d Cir. 1964) ; American Foreign S.S. Corp. v. 9,000 Tons of Manganese Ore, 109 F.Supp. 765, 775–776 (D. N.J.1952).

7. *See* The Louise, 58 F.Supp. 445, 447 (D.Md.1945).

8. The cases relied upon by the plaintiff upon their facts are readily distinguishable. Propeller Mohawk, 8 Wall. 153, 75 U.S. 153, 19 L.Ed. 406 (1868) ; Richard Constr. Co. v. Monongahela & Ohio Dredging Co., 407 F.2d 1170 (3d Cir. 1969) ; Cargo & Tankship Management Corp. v. India Supply Mission, 221 F. Supp. 680 (S.D.N.Y.), aff'd, 336 F.2d 416 (2d Cir. 1964) ; American Foreign S.S. Corp. v. 9,000 Tons of Manganese Ore, 109 F.Supp. 765 (D.N.J.1952). In each instance the defendant accepted delivery at an intermediate port, or acquiesced in delivery by another party or by another vessel. In short, these were matters of consensual arrangement.

"The claim for freight, when the goods have been given up by the shipowner short of their destination, must rest upon a new contract, either expressly made, or to be inferred from the conduct of the parties. No such inference can be drawn unless the goods and their proceeds have been accepted voluntarily, and in such a way as to show that the further carriage by the shipowner was intentionally dispensed with. If the merchant must either have accepted the goods where they lay, or abandoned them, no promise to pay freight can be presumed from the fact of their being given up to him. The presumption cannot arise unless the shipowner was able and willing to carry the goods to their destination, or might have become so within a reasonable time." Carver's Carriage of Goods by Sea 781 (10th ed. 1965).

9. *See* The Louise, 58 F.Supp. 445, 447 (D. Md.1945) ; *cf.* Richard Constr. Co. v. Monongahela & Ohio Dredging Co., 407 F.2d 1170, 1172 (3d Cir. 1969).

Charter Party and deliver the Government of India's cargo to Bombay, India." This the plaintiff failed to do.

 Upon all the facts, the plea of unjust enrichment is pretentious. The ill-fated voyage and nondelivery of the cargo were entirely due to the shipowner's breach of its obligation to supply a "tight, staunch and strong" vessel that was "in every way fitted for the voyage to India," and to its failure or inability to meet its financial commitments pertaining to the vessel which resulted in her seizure to satisfy creditors' claims and ultimate foreclosure.[10]

Accordingly, defendant's motion for summary judgment is granted and the plaintiff's motion is denied.

10. Upon the argument of this motion, counsel for the defendant contended that the six-months' delay while the vessel was under attachment in Trinidad resulted in damage to the cargo and other damages, but these have not been presented as part of defendant's motion for summary judgment.